LEONARD R. FRIEDMAN *vs.* BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. September 5, 1990. - November 1, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, & GREANEY, JJ.

*Administrative Law*, Decision, Hearing, Rehearing. *Evidence*, Administrative proceeding. *Board of Registration in Medicine.*

In a disciplinary proceeding against a psychiatrist, the decision of the Board of Registration in Medicine was based on substantial evidence and was not arbitrary or capricious. [476-477]

In a disciplinary proceeding before the Board of Registration in Medicine, a psychiatrist was not prejudiced by the board's treatment of a purported tape recording of a telephone conversation between him and a patient. [477-478]

In the absence of a timely request, a psychiatrist was not entitled to a copy of a hearing officer's proposed decision in a professional disciplinary proceeding against him. [478]

A psychiatrist had no right to an evidentiary hearing on his motion that the Board of Registration in Medicine reopen and reconsider its decision in a disciplinary proceeding against him. [478-479]

The record of a disciplinary proceeding before the Board of Registration in Medicine provided no basis for a psychiatrist's claim that the board was biased against him and unfair. [479]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on July 3, 1987, and May 8, 1989, respectively.

The cases were consolidated for trial and were heard by *O'Connor*, J.

*Leonard R. Friedman*, pro se.

*Alice Daniel*, Assistant Attorney General, for Board of Registration in Medicine.

WILKINS, J. On June 24, 1987, the Board of Registration in Medicine (board) revoked the registration of Dr. Leonard

R. Friedman to practice medicine; on the ground that Friedman, who participated in sexual conduct with a patient during one or more office visits, had engaged in gross misconduct in the practice of medicine in violation of G. L. c. 112, §§ 5 (c), 5 (h), and 61 (1988 ed.), and 243 Code Mass. Regs. § 1.03 (5)(a)(3). The board adopted the recommended decision of its hearing officer, a member of the board. Friedman appealed pursuant to G. L. c. 112, § 64 (1988 ed.). On July 9, 1987, a single justice of this court denied Friedman's motion to stay the board's order of suspension. Friedman took no action to obtain a decision on the merits of this appeal until the spring of 1989.

In the interim, in May of 1988, Friedman asked the board to reopen and reconsider its decision on the basis of alleged fraud and mistake. He contended principally that, based on what Friedman called newly discovered evidence, certain witnesses had given materially false testimony. Applying the principles of Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), the board concluded, on April 5, 1989, that the motion for reconsideration relied on nothing that due diligence could not have uncovered before the board closed its administrative record. For this and other reasons, set forth in a comprehensive memorandum, the board denied the motion. In May, 1989, Friedman appealed from the denial of that motion, and his two appeals were consolidated.

A single justice of this court heard the appeals and, in November, 1989, entered an order affirming the board's decisions (a) revoking Friedman's license to practice medicine and (b) denying Friedman's motion to reopen and reconsider its decision.

We affirm the single justice's order. The single justice concluded that (1) the board's decision was based on substantial evidence; (2) there was no prejudicial error in the board's treatment of a tape recording of a telephone conversation allegedly between Friedman and his patient; (3) the board did not abuse its discretion in declining Friedman's motion to reopen and reconsider the matter, and (4) Friedman was not entitled to an evidentiary hearing on that motion. We shall

consider these issues, to the extent that they are argued to us, and shall comment on other issues that Friedman seeks to raise here for the first time. But first, we set forth briefly the facts on which the board relied in making its decision.

The patient first saw Friedman, a board-certified forensic psychiatrist, at his office in July, 1980. She continued to visit him at least monthly until the summer of 1982. She had sustained an injury in September, 1979, while at work for an agency of the Federal government and was receiving weekly benefit payments. Friedman provided to the Federal government, from time to time, information concerning the patient's condition that supported her claim for benefits.

The board found that during one or more of three office visits (on June 7, June 22, and July 6, 1982) some form of sexual activity took place between Friedman and the patient. The board's decision recites what the patient testified happened on these occasions but does not make explicit findings about what occurred. The board should not have simply recited the patient's testimony, but rather it should have made findings of fact based on, or in rejection of, her testimony. See G. L. c. 30A, § 11 (8) (1988 ed.). It is clear, however, that the board disbelieved Friedman's denials and rejected his claim that the patient was out to get even with him. The board found that Friedman had exploited the patient sexually.

1. The board's decision was supported by substantial evidence and was not arbitrary or capricious. The decision thoroughly and logically analyzed the evidence and explained why the board believed the patient's testimony that sexual activity occurred during one or more office visits and why the board disbelieved the doctor's explanation. Part of the substantial evidence was testimony concerning an August 9, 1982, telephone conversation between the patient and Friedman, overheard by the patient's son who had been listening on an extension line. In that conversation, the patient accused Friedman of sexual exploitation, and he did not deny the accusation. We should not, and do not, consider Fried-

man's various arguments on matters of credibility. They were for the board to resolve, and it did so.

2. Friedman argues that he was greatly prejudiced by the way in which the hearing officer and the board treated a tape recording purporting to present the August 9, 1982, telephone conversation between him and his patient. There was no error.

On the first day of the hearing, over objection, a tape recording was played of a telephone conversation, purporting to be the August 9 telephone conversation which, according to the patient, had been accidentally recorded on her telephone answering machine. The tape recording was not admitted in evidence because complaint counsel decided to withdraw his offer of it in evidence. The doctor's counsel did not move, however, to strike the conversation from the transcript. The hearing officer and board did not rely on the transcript of the conversation in making their decisions. The absence of the recording from the record and the further absence of any board reliance on its contents make it unnecessary to decide whether, in an administrative hearing, an unlawfully made recording of a telephone conversation could properly be admitted in evidence and relied on by the agency. Any illegality, of course, was not committed by the board or its agents.[1]

The board considered the question whether the tape recording was authentic and recognized that, if it had been altered, the board's judgment of the patient's credibility would be affected. A professional analysis of the tape, properly ob-

---

[1]Friedman testified that he initiated the telephone conversation with the patient on August 9, 1982. He did not deny the substance of the conversation as testified to by the patient and her son, who said that he had listened in on the conversation. Friedman agreed that she had said that he had sexually exploited her and that something sexual happened in the office. Neither during the telephone conversation nor at the hearing did Friedman admit to the truthfulness of the patient's statements. He testified that it would have been inappropriate in the circumstances if he had called her a liar during the telephone conversation. Assuming the authenticity of the tape, a point the board considered through an expert and to which we shall next turn, the playing of the tape recording was not a significant event in resolving the credibility question or in any other respect in this proceeding.

tained by the board with the involvement of Friedman's counsel and included in the record, indicated that the tape could be the original recording and that "it has not been mechanically or electrically altered."[2]

3. Friedman does not argue here that the board abused its discretion in denying his motion to reopen and reconsider its decision. He does claim that the board should have furnished him a copy of the tentative proposed decision of the hearing officer before the board adopted it. Pursuant to G. L. c. 30A, § 11 (7) (1988 ed.), the regulations governing the proceedings before the board provided that Friedman was entitled to a copy of the tentative decision only if he had made such a request in writing. See 243 Code Mass. Regs. § 1.05 (4) (a) in effect at the time of the hearing. See now 801 Code Mass. Regs. § 1.01 (10)(n)(1); 243 Code Mass. Regs. § 1.04, adopting for the board the standard adjudicatory rules of practice and procedure (801 Code Mass. Regs. § 1.00). He made no such request.

Friedman claims that, as a matter of constitutional right, he was entitled to an evidentiary hearing on his motion to reopen and reconsider the board's decision. Although Friedman had an interest in his license to practice medicine and presumably a due process right to a hearing before that interest could be extinguished, there is no authority for Friedman's claim that, once he had had an evidentiary hearing and the board had made an unfavorable decision, he had a constitutional right to a hearing on his motion to reopen and reconsider. Friedman had a properly conducted hearing on proper notice. Due process of law does not require a post-decision evidentiary hearing. See *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus*, 154 U.S. 421, 426-

---

[2]In denying Friedman's motion to reopen the matter, the board considered his claim that he had an expert opinion that the tape was not recorded on an answering machine of the type the patient said that she had owned. The board rejected the claim because Friedman had not been diligent in pursuing the matter before the record closed. The board stated, moreover, that it did not rely on the truth of any matter stated in the tape in reaching its decision.

427 (1894); *In re Kasuba Estate*, 401 Mich. 560, 566 (1977) ("Where an ample hearing is afforded, due process does not require a state to provide a rehearing of the same matter or a new trial . . .").

4. In arguing that the board was biased against him and unfair, Friedman seeks to rely on facts not in the record before either the board or the single justice. We do not consider such arguments.

In 1989 (St. 1989, c. 653, § 233), the Legislature indicated that, effective in 1990, disciplinary hearings under G. L. c. 112, § 5, should be held before hearing officers of the Division of Administrative Law Appeals. The fact that the Legislature prospectively transferred hearings on the board's disciplinary complaints to an independent agency provides no basis for concluding that the board treated Friedman improperly.

The claim of the board's bias was not raised before the single justice, even as an argument. When an issue has not been raised below, we generally have exercised our discretion not to consider the issue for the first time on appeal. See *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509-510 (1988). Certainly, when the factual predicate of such an argument is not in the record, we must decline to do so.[3]

5. We do not discuss certain other minor issues argued here for the first time and, in several instances, not sufficiently argued even to constitute adequate appellate argument. We have considered all issues properly before us and conclude that the order upholding the board's decisions (in effect a judgment in each appeal) should be affirmed.

*So ordered.*

---

[3]Another argument not properly here, because it is now made for the first time, is that the sanction the board imposed is inconsistent with sanctions imposed on other doctors in similar cases. In any event, the doctor makes no valid case that he was the victim of an inequitably disparate sanction.