Leonard R. **FRIEDMAN**, M.D., Plaintiff, Appellant,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, et al., Defendant, Appellee.

No. 94–1611.

United States Court of Appeals, First Circuit.

Submitted Sept. 14, 1994.

Decided Jan. 27, 1995.

---

Leonard R. Friedman, M.D., on brief, pro se.

Donald K. Stern, U.S. Atty., and Suzanne E. Durrell, Asst. U.S. Atty., on brief, for appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

Leonard Friedman is appealing the district court's decision dismissing his case for mootness. We affirm.

### I. *Background*

We recite only briefly the pertinent facts. In 1991, Friedman sued various defendants, claiming that the revocation of his medical license in Massachusetts in 1987 and his exclusion from Medicare provider rolls in 1990 had been unlawfully effected. The district court stayed proceedings pending the results of other state and federal court actions involving the same parties. In October 1993, the court approved the parties' stipulation of partial dismissal. Pursuant to that stipulation, Friedman dismissed with prejudice his claims against all defendants except his claim against the Department of Health and Human Services (HHS) for a declaratory judgment that HHS had wrongfully excluded him from Medicare provider rolls in 1990.[1]

At Friedman's request, HHS reinstated Friedman as a Medicare provider in November 1993. When HHS later answered Friedman's complaint, it asserted that Friedman's reinstatement had mooted his claim for relief and that the action should be dismissed. The court agreed and dismissed the action *sua sponte.*[2]

---

1. HHS excluded Friedman under 42 U.S.C. § 1320a–7(b)(4)(A), which permits exclusion of an individual "whose license to provide health care has been revoked or suspended by any State licensing authority ... for reasons bearing on the individual's ... professional competence, professional performance, or financial integrity." HHS based its exclusion on New York's revocation of Friedman's medical license. New York had based its revocation on Massachusetts' determination that Friedman had engaged in "gross misconduct" sufficient to warrant revocation of Friedman's medical license in that state. Friedman's period of exclusion was to end when ei-

ther Massachusetts or New York reinstated his license.

2. Friedman did not immediately appeal the order dismissing his case, but filed a motion for relief from judgment under Fed.R.Civ.P. 60(b), the denial of which he appealed. Because his motion was filed within the time limit for filing motions under Fed.R.Civ.P. 59(e), however, and challenged the legal correctness of the court's decision that his action was moot, we treat it as a timely Rule 59(e) motion and assume, without deciding, that the dismissal of his action for mootness is properly before us. *See Perez–Perez*

## II. Discussion

We address two of Friedman's arguments on appeal.[3] First, Friedman says that HHS is reasonably likely to exclude him again since California revoked his medical license in 1990 and that any future exclusion by HHS would likely evade judicial review because it would lapse before the court could render a decision. Second, Friedman argues that his exclusion has continuing collateral consequences that will affect his reputation and his medical and legal careers. For those reasons, Friedman claims that his request for declaratory relief is not moot.

### A. Capable of Repetition Yet Evading Review

■ We conclude that the capable of repetition yet evading review exception to mootness does not apply. While a one-year exclusion may well evade judicial review, it does not seem at all likely that HHS will exclude Friedman on the basis of California's revocation of his medical license.

At the time Friedman applied for reinstatement, the California revocation clearly would have been a basis for excluding Friedman from the Medicare program. *See* 42 U.S.C. § 1320a–7(b)(4)(A), *supra* note 1. Yet HHS reinstated Friedman in 1993, and so it must not have believed that the 1990 California license revocation would be grounds for excluding Friedman. *See* 42 C.F.R. § 1001.3002(a)(3) (HHS "will" reinstate an excluded individual if, among other things, it determines that there is "no additional basis" under the statute for continuing the exclusion).[4] Thus, the fact that Friedman was reinstated shows that HHS would be unlikely to use the California revocation to exclude Friedman in the future. Moreover, exclud-

ing Friedman because of the California revocation would arguably be an abuse of discretion. California revoked Friedman's license because of Massachusetts' revocation· of his license; that is, California based its license revocation on the same misconduct as had New York. Because HHS based Friedman's exclusion on New York's revocation of Friedman's license, excluding him because of the California revocation would essentially penalize Friedman twice for the same misconduct, a course of action that we doubt HHS would undertake.

### B. Collateral Consequences

■ The adverse collateral consequences to which Friedman points do not suffice to avoid mootness in this case. According to Friedman, overturning his exclusion would relieve him of the stigma of having been excluded, ease his admission to practice law in Massachusetts, and relieve him of the obligation to explain the exclusion when he seeks hospital staff privileges, affiliation with certain health care entities, or licensure in other states.

Certainly, in some situations, adverse collateral consequences such as those advanced here have been found to avoid mootness. *See, e.g., Kirkland v. National Mortgage Network, Inc.,* 884 F.2d 1367, 1370 (11th Cir.1989) (the dismissal of an action did not moot an attorney's challenge to a court's revocation of his admission *pro hac vice* for failure to abide by promises made during settlement negotiations; the "brand of disqualification on grounds of dishonesty and bad faith could well hang over [plaintiff's] name and career for years to come"); *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1200 n. 14 (11th Cir.1985) (the

*v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284–85 (1st Cir.1993); *Mariani–Giron v. Acevedo–Ruiz,* 945 F.2d 1, 3 (1st Cir.1991).

**3.** Other arguments he makes are without merit, e.g., that the stipulation of partial dismissal and the court's failure to revoke its stay order prior to Friedman's reinstatement waived mootness, that evidence discovered in 1991 before Friedman filed his suit qualified as new evidence justifying relief from the court's judgment, and that the mootness doctrine does not apply to judicial review of agency decisions.

**4.** Friedman alleges that this regulation and others cited by HHS in its brief were not in effect at the time he was excluded, but does not allege that this and the other regulations embody practices or policies that are different from ones prevailing at the time of his exclusion. In addition, we note that the regulations relating to the reinstatement of excluded individuals became effective on January 29, 1992, and so presumably applied to Friedman's reinstatement in November 1993.

settlement of a class action did not moot attorneys' challenge to their disqualification by the court in part because counsel could be exposed to further sanctions by the bar and their disqualification could have adverse effects on their careers and public image) (alternative holding); *Miller v. Washington State Bar Ass'n,* 679 F.2d 1313, 1316, 1318 (9th Cir.1982) (an attorney could sue a state bar association to expunge a letter of admonition from his file since he would be required to explain the admonition if he applied to the bar in other states or for judicial appointments).

Here, however, it is not the HHS exclusion which has tarnished Friedman's reputation, but the apparently valid New York and Massachusetts licensing board decisions,[5] which concluded that Friedman had engaged in gross professional misconduct sufficient to warrant license revocation. Consistent with the applicable statutory basis for exclusion, HHS's letter notifying Friedman of his exclusion explained that his exclusion was based on "the fact" that New York had revoked his license and indicated that the issue in any

administrative hearing would be "whether your license was revoked for reasons relating to your professional competence, professional performance, or financial integrity." Since Friedman's Medicare exclusion was based solely on the fact that his license had been revoked, the exclusion effectively signified only that New York had revoked Friedman's license for reasons bearing on his professional competence or performance. *Compare* 42 C.F.R. § 1001.2007(a)(i) & (ii) (the only issues before an ALJ in an exclusion hearing are whether the basis for the imposition of the sanction exists and whether the length of the exclusion is reasonable).[6] Although the exclusion resulted from the license revocation, it conferred no additional stigma on Friedman.[7]

Moreover, the actual effect of the exclusion was exclusively a financial one, as the letter notifying Friedman of his exclusion made clear. Because of his exclusion, neither Medicare nor certain federally-assisted state health care programs (from which Friedman was also excluded) would pay for services or items furnished to Friedman's patients.[8]

5. Friedman apparently did not challenge the New York decision in court. The Massachusetts Supreme Judicial Court has upheld the Massachusetts decision. *See Friedman v. Board of Registration in Medicine,* 408 Mass. 474, 561 N.E.2d 859 (1990) (substantial evidence supported the decision to revoke Friedman's license for gross misconduct), *cert. denied,* 498 U.S. 1107, 111 S.Ct. 1014, 112 L.Ed.2d 1096 (1991); *Friedman v. Board of Registration in Medicine,* 414 Mass. 663, 609 N.E.2d 1223 (1993) (petition for relief from license revocation was denied).

6. This regulation became effective January 29, 1992, after Friedman was excluded. Nonetheless, it was published as a proposed regulation before Friedman's exclusion and represents HHS's interpretation of its obligations in exclusions such as Friedman's as of the time Friedman was excluded. *See* 55 Fed.Reg. 12,206 (4/2/90) (explaining that HHS's authority to exclude certain individuals, including those whose state medical licenses have been revoked, is "derivative" because "our ability to exclude derives from the fact that another entity has imposed a sanction on the individual or health care entity. [HHS] would not be required to reestablish the factual or legal basis for such underlying sanction.").

7. HHS's letter to Friedman notifying him of his exclusion informed him that HHS would notify certain state agencies and the public of his exclusion and of the reasons therefor. A copy of the

public notice of Friedman's exclusion is not included in the record, but it apparently would have stated that Friedman's exclusion would end when his license was reinstated. *See* 42 U.S.C. § 1320a–7(c)(3)(A) (the notice of exclusion given to the excluded individual and to the public shall specify the minimum period of exclusion). At the time Friedman was reinstated, HHS was required to notify "those agencies, groups, individuals, and others that were originally notified of the exclusion" of Friedman's reinstatement. *See* 42 C.F.R. § 1001.3003(a)(4). Presumably, therefore, public notice of Friedman's reinstatement was given, although it is not clear whether the notice would have given the reason for his reinstatement. *Compare id.* § 1001.134(a)(2) (a predecessor regulation to § 1001.3003(a), which provided for notice to the public of an excluded individual's reinstatement). Assuming that the original public notice of Friedman's exclusion had stigmatized Friedman as a person who had lost his medical license for reasons bearing on his professional performance or competence, that stigma likely would have been erased to the extent possible by the reinstatement notice implying, if not stating outright, that he had regained his license.

8. The letter stated:

The effect of your exclusion from participation in the Medicare and State health care programs is that no payment will be made for any

Regulations in effect at the time Friedman was reinstated indicate that such payments would have resumed once he was reinstated. *See* 42 C.F.R. § 1001.1901(b) (payments under Medicare and applicable state health care programs may not be made unless and until an excluded individual is reinstated into the Medicare program); *id.* § 1001.3003(b) (with certain exceptions apparently not applicable here, state health care programs must reinstate an individual to such programs upon notification by HHS that the individual has been reinstated to the Medicare program). There is nothing in the present record to suggest that reinstatement did not have this result in Friedman's case.

Thus, if Friedman should seek some future affiliation with a hospital or other health care entity, the decision to grant or deny him affiliation would not be affected by the entity's inability to receive Medicare or applicable state program payments for care given to Friedman's patients. On the other hand, if hospitals, health care entities, state medical licensing boards, or any boards of bar examiners are concerned about Friedman's character or professional competence or performance, their response to any future application of his would be affected predominantly, if not exclusively, by the apparently valid state decisions revoking his medical license.

While Friedman may have expected the district court to review the Massachusetts license revocation proceedings in this suit, its review was of necessity limited to the exclusion decision itself which did not encompass the state proceedings. As noted above, the parties stipulated to dismissal of Friedman's claims against all defendants with the exception of his claim against HHS relating to his Medicare exclusion. Presumably, the jurisdictional basis for that claim would be 42 U.S.C. § 1320a–7(f)(1), which provides for judicial review of final HHS exclusion decisions. Under HHS Departmental Appeals Board precedent in effect at the time of Friedman's exclusion, excluded individuals could not challenge their exclusion by collaterally attacking the underlying state license revocation proceedings. Citing that precedent, both the administrative law judge and the Departmental Appeals Board rejected Friedman's attempt to collaterally attack the Massachusetts and New York license revocation proceedings. Thus, the validity of the underlying state proceedings was never an issue in Friedman's exclusion proceedings. The scope of the proceedings below having been confined to the determination whether the statute applied to Friedman,[9] whether Friedman's license had been revoked by a state licensing authority for the statutorily prescribed reasons, and whether the period of exclusion was reasonable, the district court's review of the decision excluding Friedman would be likewise constrained. *Cf. Travers v. Sullivan*, 801 F.Supp. 394, 403 (E.D.Wash.1992) (where HHS excluded an individual on the basis of a prior state conviction for a program-related offense, it was "not necessary or proper for the court to delve into the facts surrounding the conviction"; the court's role under § 1320a–7(f) was not to review the validity of the underlying conviction but to review the validity of the exclusion), *aff'd,* 20 F.3d 993, 998 (1994).[10]

items or services (other than an emergency item or service) furnished, ordered or prescribed by you under the above-mentioned programs.

Furthermore, payment will not be made to any entity in which you are serving as an employee, administrator, operator, or in any other capacity for any services that you furnish, order or prescribe on or after the effective date of this exclusion.

9. Friedman had alleged that the statute was being applied retroactively to him since Massachusetts had rendered its licensing decision before the statute became effective.

10. HHS's policy barring collateral attack on state license revocation proceedings and limiting the nature of the issues addressed in exclusion proceedings is now codified in regulations that have been expressly made binding on federal courts. *See* 42 C.F.R. § 1001.2007(d) (prohibiting collateral attacks on the underlying state determinations which form a basis for exclusion); *id.* § 1001.2007(a)(i) & (ii) (the only issues before an administrative law judge in an exclusion hearing are whether the basis for excluding an individual exists and whether the length of the exclusion is reasonable); *id.* § 1001.1(b) (these regulations are applicable to and binding on federal courts in reviewing exclusions imposed by HHS) (this latter regulation became effective January 22, 1993).

Under these circumstances, we conclude that this action is moot. *See Florida Farm-workers Council, Inc. v. Marshall,* 710 F.2d 721, 731 (11th Cir.1983) (the court determined that expiration of plaintiff's debarment had mooted its action challenging the debarment despite plaintiff's claim of stigma because the court had upheld the costs disallowances that had caused the debarment; it explained that it could not discern any additional stigma created by the debarment and that the debarment had not prevented plaintiff from receiving substantial federal funds, apparently after the debarment had ended).

*Affirmed.*