# United States Court of Appeals

## For the First Circuit

No. 04-1525

JOSEPH OBERT,

Plaintiff, Appellee,

v.

REPUBLIC WESTERN INSURANCE COMPANY, JOSEPH J. FRATUS,
STEPHANIE FRATUS FORTE, and CARISSA FRATUS, a minor,

Defendants.

———————

ROBERT A. SHERMAN, RODERICK MacLEISH, JR.,
ANNAPOORNI R. SANKARAN, and GREENBERG TRAURIG, LLP.,

Appellants.

———————

No. 04-1587

JOSEPH OBERT,

Plaintiff, Appellee

v.

REPUBLIC WESTERN INSURANCE COMPANY, JOSEPH J. FRATUS,
STEPHANIE FRATUS FORTE, and CARISSA FRATUS, a minor,

Defendants.

———————

ADLER, POLLOCK & SHEEHAN, P.C., ELIZABETH McDONOUGH NOONAN,
TODD D. WHITE,

Appellants.

———————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

Before

Boudin, <u>Chief Judge</u>,

Cyr, <u>Senior Circuit Judge</u>,

and Lipez, <u>Circuit Judge</u>.

_____

<u>Thomas R. Kiley</u> with whom <u>Nicholas Kenney</u> and <u>Cosgrove, Eisenberg and Kiley, P.C.</u> were on brief for appellants Annapoorni R. Sankaran, Robert A. Sherman and Greenberg Traurig, LLP.
   <u>David J. Oliveria</u> for appellants Adler, Pollock & Sheehan, Inc., Elizabeth McDonough Noonan and Todd D. White.
   <u>Peter J. Linn</u>, <u>James A. Murphy</u> and <u>Murphy, Pearson, Bradley & Feeney</u> on brief for appellant Roderick MacLeish, Jr.
   <u>Max Wistow</u> with whom <u>Stephen P. Sheehan</u> and <u>Wistow & Barylick Incorporated</u> were on consolidated brief for appellee.

February 18, 2005

**BOUDIN, <u>Chief Judge</u>.** This is a set of consolidated appeals by five lawyers and two law firms from orders of the district court revoking the pro hac vice status of two of the lawyers and making adverse findings yet to be described, with sanctions, based on violations of pertinent ethical rules and other constraints on attorney practice. Pertinent litigation dates back to 1987 but the principal events underlying this appeal are discussed in greatest detail in three decisions in this case.[1]

We begin with a skeleton outline of the events. In 1987, Joseph Fratus and others brought a diversity suit ("the <u>Amerco</u> case") against Joseph Obert and others in the federal district court of the District of Rhode Island to recover for injuries arising out of an automobile accident in 1985. <u>See</u> <u>Fratus</u> v. <u>Amerco</u>, CA No. 87-364-b. <u>See also</u> <u>Fratus</u> v. <u>Amerco</u>, 575 A.2d 989 (R.I. 1990) (on certification to the Rhode Island Supreme Court). Fratus had been hit by a rented U-Haul truck driven by Obert, who was then working for American Drywall Company, driving incident to his employment. Republic Western Insurance Company was U-Haul's insurer.

---

[1]<u>Obert</u> v. <u>Republic W. Ins. Co.</u>, 190 F. Supp. 2d 279 (D.R.I. 2002) (decision on disqualification); 264 F. Supp. 2d 112 (2003) (magistrate judge's report and recommendation on violations and sanctions); 264 F. Supp. 2d 106 (2003) (memorandum and order of district court on violations and sanctions). <u>See also</u> Sankaran aff. excerpted in the appendix to this decision ("Sankaran aff.").

In the Amerco case, presided over by then-Chief Judge Francis Boyle, the jury awarded the Fratuses over $3 million against Obert, Drywall and U-Haul, but U-Haul was thereafter exculpated under state law. Republic Western was nevertheless deemed liable for minimum insurance coverage under Rhode Island law, which was then $25,000.

In 1994, new litigation ("the Fratus case") developed in the district court, again before Judge Boyle. See Fratus v. Republic W. Ins. Co., 963 F. Supp. 113 (D.R.I. 1997), aff'd in part and remanded, 147 F.3d 25 (1st Cir. 1998). Fratus claimed that Republic Western owed $25,000 under mandatory insurance coverage, interest on the entire Amerco judgment against Obert, and further payments based on certain Republic Western umbrella policies issued to U-Haul that allegedly made Obert an insured. Judge Boyle found in Fratus' favor on the first two claims but not on the third. On cross-appeals, this court upheld the interest award with an adjustment but remanded for further proceedings on the umbrella-policy coverage issues.

On remand, the case was randomly reassigned to Judge Ronald Lagueux, Judge Boyle having taken inactive senior status. There was extensive further discovery relating, inter alia, to the coverage issue and the alleged back-dating of an endorsement by Republic Western. After two years and shortly before trial, Republic Western settled with the Fratuses--but without any release

-4-

of the Fratuses' claims against Obert--leaving Obert still liable for the unpaid portion of the original judgment in the <u>Amerco</u> case as identified above.

On July 3, 2001, Obert filed the present lawsuit ("the <u>Obert</u> case") in the federal district court in Rhode Island against Republic Western and others, claiming, <u>inter alia</u>, that the insurer allegedly breached various duties to Obert.  On the same day, Republic Western filed an action in the federal district court in Massachusetts seeking a ruling that Obert was not an insured under the previously mentioned umbrella policies issued by Republic Western to U-Haul.  The latter action was assigned to Judge Nathaniel Gorton, then sitting in Worcester, Massachusetts.

When the <u>Obert</u> case was filed in Rhode Island, Republic Western obtained representation from three lawyers from the Boston office of Greenberg Traurig, who appeared pro hac vice:  Robert Sherman, Roderick MacLeish, Jr., and Annapoorni Sankaran.  Two other lawyers, Elizabeth Noonan and Todd White, both of the Providence firm of Adler, Pollock & Sheehan, acted as local counsel.  Obert was represented primarily by Max Wistow of the Providence firm of Wistow & Barylick.

The <u>Obert</u> case was randomly assigned to Judge Mary Lisi, but two days later Obert's attorney filed an amended civil cover sheet designating the two earlier lawsuits (the <u>Amerco</u> and <u>Fratus</u> cases) as related cases.  190 F. Supp. 2d at 287; 264 F. Supp. 2d

at 119-20.  The clerk's office then reassigned the Obert case to Judge Lagueux, who had succeeded Judge Boyle in the Fratus case. 190 F. Supp. 2d at 289; 264 F. Supp. 2d at 120.  Republic Western's counsel apparently were not sent the amended cover sheet or immediately notified of the transfer and were unaware of the precise way in which the transfer had come about.

On August 3, 2001, Obert filed a motion in the Obert case for a temporary restraining order and preliminary injunction to bar Republic Western from pursuing its lawsuit in Massachusetts. Within a couple of days, Sankaran was advised by Wistow that Judge Lagueux had summoned counsel to appear on August 9, 190 F. Supp. 2d at 293; 264 F. Supp. 2d at 114; the defense team had only recently learned that Judge Lagueux was now in charge of the case.  On August 9, Sankaran, MacLeish and White attended the conference held in Judge Lagueux's chambers.  190 F. Supp. 2d at 293; 264 F. Supp. 2d at 114.  Wistow, representing Obert, and attorney Fred Polacek, representing Fratus, were also present.  190 F. Supp. 2d at 293. It was Judge Lagueux's practice to meet promptly with counsel when a TRO was sought.  190 F. Supp. 2d at 293.  No court reporter was present.

The descriptions of the August 9 conference vary in certain respects--each of the five lawyers later filed an affidavit, and Judge Lagueux's recollection appears in his own later decision, 190 F. Supp. 2d at 293-95--but certain core events

are undisputed. Wistow spoke at some length as to why the litigation belonged in Rhode Island; Judge Lagueux made clear his agreement, authorizing Wistow to so represent Judge Lagueux's views to Judge Gorton;[2] and Judge Lagueux expressly declined to issue a TRO and said that he would hold the motion for a preliminary injunction in abeyance, pending Judge Gorton's decision as to whether to transfer or dismiss the Massachusetts action. 190 F. Supp. 2d at 293; 264 F. Supp. 2d at 115, 116.

The balance of the conference is harder to reconstruct. MacLeish inquired as to how the present case came to be assigned to Judge Lagueux, 264 F. Supp. 2d at 116, who replied that they were related cases. See Sankaran aff'd ¶ 13. MacLeish also sought to explain how the policy endorsement limited Obert's coverage while Judge Lagueux resisted any effort to pursue this issue, noting that Republic Western had previously misbehaved in relying upon a back-dated endorsement in the earlier Fratus litigation before Judge Lagueux. 190 F. Supp. 2d at 293-94; Sankaran aff'd ¶ 14.

Thereafter, on September 5, 2001, Republic Western filed a motion asking Judge Lagueux to recuse himself under 28 U.S.C. § 455(a) (2000) on the statutory ground that "his impartiality might reasonably be questioned" or, alternatively, to retransfer

---

[2]Judge Lagueux recollects that he said he "could" himself call Judge Gorton but would leave it to counsel to report his views; three defense counsel say they understood that Judge Lagueux was going to make such a call. Wistow and Polacek were in accord with Judge Lagueux's recollection.

-7-

the case to Judge Lisi.  Supporting memoranda relied primarily

(1) on the appearance of the assignment of the case to Judge

Lagueux allegedly in contravention of local rules, (2) on criticism

by Judge Lagueux of Republic Western in the prior litigation,[3] and

(3) on the TRO/preliminary injunction proceedings and Judge

Lagueux's supposed refusal to allow MacLeish to defend meaningfully

against Obert's motion.

The motion and the supporting memorandum bore the names

of all five defense counsel and both law firms and the signatures

of both MacLeish and Noonan.  They were supported by a conclusory

affidavit from a Republic Western officer questioning Judge

Lagueux's impartiality and by the Sankaran affidavit--excerpted in

the appendix to this opinion--primarily describing the events at

the August 9 conference (which the affidavit called a "hearing").

On November 1, 2001, Judge Lagueux heard argument on the

---

[3]In the earlier remand proceeding in <u>Fratus</u>, Judge Lagueux had
stated to Republic Western counsel during a hearing on May 25, 2000
(the emphasis is added):

> Therefore, this motion to assert this counterclaim
> for reformation is really frivolous.  And if you'd done
> your research, you would have known that i[t] was
> frivolous.  At the appropriate time in this case, I will
> deal with that issue. Republic Western, it seems to me,
> clearly has been dragging its feet and delaying the
> ultimate resolution of this case, and is completely in a
> state of lack of cooperation in doing that.  <u>And I think
> sanctions will be in order when this case is finally
> concluded</u>.  <u>I'm very troubled by their attitude in this
> case</u>.  Continual motions for summary judgment.  <u>And the
> day of reckoning will come</u>.

motion to disqualify, thereafter informing counsel from the bench that he was going to deny the motion.  On March 29, 2002, the judge released a detailed opinion and order, 190 F. Supp. 2d 279, formally denying the motion to disqualify or transfer and ordering the three Massachusetts defense counsel to show cause why their pro hac vice status should not be revoked.  Citing several Rhode Island ethics rules,[4] Judge Lagueux found that the motion to disqualify and supporting affidavit were "prima facie" a violation.  Id. at 300.  The court also invited Wistow to move for sanctions.  Id.

Judge Lagueux referred the show cause order and the sanctions motion filed by Wistow to Magistrate Judge Hagopian, who held a two-day evidentiary hearing in June 2002.  On January 17, 2003, the magistrate judge issued a report and recommendation, which Judge Lagueux adopted with minor modifications and appended to his own brief decision dated May 28, 2003.  264 F. Supp. 2d at 112.  The decision found that MacLeish and Sankaran had violated local ethical rules and that all five defense counsel and their

---

[4]Under Local Rule 4(d) of the United States District Court for the District of Rhode Island, the Rules of Professional Conduct of the Rhode Island Supreme Court are the standard of conduct for all attorneys practicing before the federal district court in Rhode Island.

firms had violated Rule 11.[5]  All were held responsible for about $31,000 in attorneys' fees payable primarily to Wistow.

In 2004, the parties settled the underlying litigation, and the settlement included the payment of attorneys' fees.  The underlying case has now been dismissed.  All five defense counsel and their law firms have now appealed from the orders relating to their conduct.  In these appeals, the defense counsel and their law firms are concerned centrally with the district court's <u>findings</u> of ethical and other violations.

The settlement of the case moots the only sanctions imposed--the award of attorneys' fees and the revocation of pro hac vice status.  However, given the substance of the underlying rulings, the reputations of counsel are affected by the findings that individual counsel and their firms violated state ethics rules or Rule 11, the Rule 11 violations in this case being closely related to the ethics rulings.  An affidavit from one of the counsel underscores the serious practical consequences of such findings.  This is sufficient to avoid mootness.  See <u>Friedman</u> v. <u>Shalala</u>, 46 F.3d 115, 117-18 (1st Cir. 1995) (collecting cases).

---

[5]In addition to ethical rules and Rule 11, the magistrate judge also relied tersely on 28 U.S.C. § 1927 (2000), which permits sanctions for "unreasonably and vexatiously" multiplying litigation.  Although its standards differ slightly from those of Rule 11, <u>see</u> <u>Cruz</u> v. <u>Savage</u>, 896 F.2d 626, 632 (1st Cir. 1990), what our decision says about Rule 11 applies equally to section 1927. For simplicity, we refer only to the former.

The Supreme Court has instructed that review of orders under Rule 11 is for "abuse of discretion," but it has also said that this encompasses correction of "legal error" or "clear error" as to fact findings. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990). Such standards are familiar and no reason is apparent why review of overlapping ethics rulings should be markedly different. See In re Cordova-Gonzalez, 996 F.2d 1334, 1335 (1st Cir. 1993) (applying abuse-of-discretion standard to review of disbarment).

We start with the most serious finding, namely, that Sankaran filed an "untruthful" affidavit, which MacLeish adopted as his own in moving to recuse Judge Lagueux. That finding was the basis for holding that both counsel had violated various provisions of the Rhode Island ethical rules. 264 F. Supp. 2d at 116, 117. That finding was also a ground for concluding that both of these counsel, and counsel White, had violated Rule 11, specifically, by filing an affidavit that "had no basis in fact." Id. at 121.

"Untruthful" in the context of the Rhode Island ethical rules means knowingly false. RIRPC 3.3(a)(1); In re Schiff, 684 A.2d 1126, 1127 (R.I. 1996). In our view and upon this record, the affidavit was not knowingly false as to any material fact, although one of the statements may well have been factually inaccurate and another was a dubious and unattractive piece of lawyer characterization. Four different statements were identified as

-11-

factually false by the magistrate judge, Judge Lagueux or both.  We consider them one by one.

First, both judges were highly critical of Sankaran's use in her affidavit of the word "hearing" to describe the chambers conference at which Judge Lagueux denied the motion for a TRO. Probably the judges thought that use of the term lent an edge to the further suggestion that MacLeish had not been allowed to present his case.  But the term "hearing" is commonly used to describe oral argument on a motion.  See, e.g., Fed. R. Civ. P. 12(d) (referring to oral arguments on motions as "hearings"); R.I. U.S.D.C. Loc. R. 12(b)(same).

Here, Judge Lagueux did summon the lawyers and (reserving for a moment MacLeish's claim that he was cut off) did hear argument from counsel, making clear his own (Judge Lagueux's) view that the case belonged in his court.  He said he would not grant the TRO and would hold the preliminary injunction motion in abeyance but made clear that the Massachusetts suit ought not proceed.  Plenty of lawyers would call this a hearing, albeit an informal one, and no blame attaches to Sankaran for her use of the term "hearing."

The second criticized assertion is the affidavit's statement that "Judge Lagueux also declined to allow Republic Western's counsel a meaningful opportunity to be heard on the motion for a temporary restraining order and the issue as to

-12-

whether the case should be in Rhode Island or Massachusetts." Sankaran aff'd ¶ 12. The magistrate judge found this statement to be "intentionally false, designed solely to mislead the court." We think it is more fairly described as an unsound piece of lawyer advocacy rather than a lie about a fact.

What appears to have happened at the hearing is that Wistow argued at length that the dual law suits belonged in Rhode Island. Judge Lagueux made clear his agreement and that Judge Gorton should be thus informed, no TRO was required; he also referred unfavorably to Republic Western's conduct in the Fratus suit after MacLeish had attempted to argue the merits of that case, but the judge permissibly rebuffed this attempt to pursue an issue that had little or nothing to do with the venue issue or the motions before him. On this premise, Sankaran's statement that MacLeish was denied "a meaningful opportunity to be heard" is simply tendentious characterization.

The third alleged untruth was Sankaran's statement that in the course of the conference Judge Lagueux said "that he was going to call Judge Gorton" to request the transfer. This, too, the magistrate judge says, was asserted "falsely" and "in an effort to mislead the Court." Why Sankaran's statement mattered is unclear. Everyone agrees that Judge Lagueux said that Wistow could convey his position to Judge Gorton; possibly the notion that Judge

Lagueux would call himself suggested to defense counsel (although certainly not to us) an unbecoming enthusiasm for the result.

Anyway, defense counsel assert that they understood Judge Lagueux to say that he would call Judge Gorton while the plaintiff's counsel, supported by Judge Lagueux, heard Judge Lagueux say only that he could call Judge Gorton. The latter is very likely what Judge Lagueux said, since "could" makes more sense than "would" where Wistow was delegated to deliver the message. But on this record Sankaran cannot be found to be lying when, supported by two witnesses (and on a point of trivial or no importance), she says she heard "would" or its equivalent.

We turn now to the finding of improper motive. As to both Sankaran and MacLeish, the magistrate judge said in identical language that her preparation, and his use, of Sankaran's allegedly "untruthful" affidavit was "calculated and designed solely for the purpose to judge-shop." Yet while "judge shopping" may be improper in some contexts, the very purpose of a motion to recuse is to secure a different judge.

There is no finding here, nor any evidence for that matter, that any of the lawyers lacked belief in the merits of the motion or possessed any purpose other than to secure recusal. Indeed, all five lawyers joined the motion, apparently after extensive discussion; but the magistrate judge did not even suggest that three of them were improperly motivated. The motion would

-14-

have been madness, and not merely foolish, unless counsel believed that it might be granted.

This brings us finally to the least serious, but best grounded, of the charges against defense counsel, namely, that the motion to recuse in this case was objectively frivolous and so grounds for Rule 11 sanctions. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 548 (1991).[6] Effectively, the motion and supporting papers said or implied that Judge Lagueux had (1) disparaged the credibility of Republic Western, (2) ignored local rules on relatedness, (3) expressed willingness to talk directly with Judge Gorton, and (4) ruled on the TRO motion with undue haste and informality and without giving MacLeish an adequate opportunity to present the defense case.

As to the first charge, Judge Lagueux's comments were based on what he had learned in presiding over related litigation (the Fratus case). The law is well settled that, absent quite unusual circumstances, a judge cannot be recused for views formed on the basis of what he learned in court. Liteky v. United States, 510 U.S. 540, 550-56 (1994); United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996). His comments were perhaps an ominous signal,

---

[6]Although one of the Rhode Island ethics rules uses a frivolousness standard akin to Rule 11, Rhode Island's own Rule 11 uses a subjective standard, see Forte Bros. v. Ronald M. Ash & Assocs., 612 A.2d 717, 724 (R.I. 1992), and the two Rhode Island rules have been read together, see Goldberg v. Whitehead, 713 A.2d 204, 205 (R.I. 1998).

but neither lawyers nor litigants are entitled to <u>tabula rasa</u> judges.

The second claim--that it might appear that the court ignored local rules governing assignments--was also without any merit. Yes, the assignment to Judge Lagueux after the initial assignment to Judge Lisi might initially have perplexed counsel before the revised civil cover sheet had been furnished to defense counsel; but that sheet was in defense counsel's hands before the motion to recuse was filed. And while defense counsel apparently inquired of the court clerk about case assignment policy, there is no claim that counsel ever asked how the reassignment had occurred in this case. Sankaran aff'd ¶ 6.

Defense counsel were free to argue that <u>Fratus</u> and <u>Obert</u> were not "related"--either because the overlap was not sufficient or because, based on counsel's reading of the back of the civil cover sheet, <u>Fratus</u> was not related because no longer a pending case. But whatever the merits of these arguments, and few judges would take them very seriously given the underlying policy, their rejection by a judge would hardly leave any reasonable appearance of partiality.

Equally unsound is any notion that any appearance of bias was implied by Judge Lagueux's willingness to talk directly to Judge Gorton. The law as to such judge-to-judge contacts about procedural issues is not well developed; and, despite defense

-16-

counsel's invocation of the sinister phrase "ex parte," judge-to-judge contacts are not subject to the same general ban as contacts between judge and one side's counsel in the absence of the other. See Code of Conduct for United States Judges, Canon 3A(4) comment (stating that proscription against ex parte communications "does not preclude a judge from consulting with other judges").

Finally, we come to the claim that Judge Lagueux did not offer defense counsel a fair opportunity to defend. Even if we assume arguendo that Judge Lagueux made clear his views on the transfer before MacLeish ever rose to speak, cf. Sankaran aff'd ¶ 11, no basis for urging recusal was created. Judges often express an initial leaning even before anyone speaks or right in the middle of an argument. It is then up to dissatisfied counsel to dissuade the judge from that initial leaning.

So far as we can tell, it appears that MacLeish inquired into how the case came to Judge Lagueux, 264 F. Supp. 2d at 116, and apparently was told, correctly, that it was because it was related to Fratus. MacLeish also sought to show, by tendering the buff copy of the insurance form, that Obert was not covered by the umbrella policies. 190 F. Supp. 2d at 294. MacLeish was entitled to try to raise the subject; but it was not relevant to the TRO or the transfer and the judge was not required to entertain argument on the point.

We are left, then, with the question whether the motion to recuse, although poorly supported and sure to fail, was frivolous within the meaning of Rule 11. The rule requires, inter alia, that counsel's proffered positions must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). Of course, what is "existing law" or a "nonfrivolous" argument for extension is sometimes debatable.

In defense of their motion, defense counsel could fairly argue that the "appearance" standard in 28 U.S.C. § 455 is itself inherently vague. See In re United States, 158 F.3d 26, 31 (1st Cir. 1998). Further, judges themselves differ; some recuse only with reluctance, stressing their "duty to sit," while others recuse themselves more liberally out of an abundance of caution. See United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000). And sometimes a multiplicity of small grounds will persuade even though each alone is weak or insufficient. In re Martinez-Catala, 129 F.3d 213, 221 (1st Cir. 1997).

At the same time, this motion--for reasons already stated--had no chance of success. Many judges would simply have denied it, explained why it was without merit, and moved on; for obvious reasons, judges need to be specially cautious in chilling motions to recuse which by necessity must often focus upon the

judge's own perceived conduct or relationships. Still, had Judge Lagueux invoked Rule 11 and required a small payment to plaintiff's counsel for having to write a response, this might well have passed muster under an abuse of discretion standard.

However, it is unrealistic in the extreme to treat the present sanctions order, in relation to its Rule 11 findings, as if it concerned only a time-wasting motion, filed in good faith but objectively hopeless. Counsel every day file motions that are hopeless, just as they make hopeless objections in trials and hopeless arguments to the judge. Perhaps a court could sanction counsel under Rule 11 for many such hopeless motions, but doing so routinely would tie courts and counsel in knots.

In this case, the show cause order was prompted not by a concern that the recusal motion was objectively hopeless and so wasted a few hours but by what were perceived to be deliberate misrepresentations. 190 F. Supp. 2d at 299. This was the explicit and central concern of the show cause order. A judge is entirely warranted in pursuing suspected lies by counsel--probably this is done too rarely--but it is virtually certain that this show cause order would not have been issued absent the suspicion of deliberate falsehoods.

More important, the magistrate judge's report and recommendation, which provide the only extensive rationale for the final sanctions order, are permeated by the explicit findings of

-19-

deliberate misrepresentations. These findings comprise the groundwork for the ethical violations but they also form part of the basis for Rule 11 sanctions against three of the attorneys; and they color the criticism of the other two who are taken, albeit unwittingly, to have filed a motion based upon deliberate falsehoods. 264 F. Supp. 2d at 116, 117, 121.

Whatever alternative order might have been written, this sanctions order is effectively <u>about</u> falsehoods even in its Rule 11 phase; and the finding of lies, together with the $30,000 sanction, gives the order a cast, and the Rule 11 findings a gravity, that go far beyond any notion that the recusal request had no chance of success. Because there were no proven lies, we think that the Rule 11 findings cannot stand even through we agree that the motion was objectively hopeless.

To overturn the findings is not to excuse the motion's content. Despite our conclusion that the motion told no literal lies, it did by innuendo cast the assignment of the case to Judge Lagueux in a sinister light; and it implied that the court had unfairly treated defense counsel in the chambers conference by improperly prejudging the transfer issue and cutting off relevant argument. Neither the innuendo nor the implication has been borne out.

The constraints of Rule 11 are one thing; proper self-restraint, even in the course of zealous advocacy, is something

else. Any competent cross-examiner knows that, without telling lies, one can often manage unfairly to impugn the integrity of an honest witness.  It is particularly a matter of regret that the unfounded insinuations in this case were directed at a judge well known both for his probity and for his uncommon ability.

The orders under review are <u>modified</u> to strike the determinations of violations of ethical rules, Rule 11 and 28 U.S.C. § 1927 by defense counsel and their law firms.

<u>It is so ordered</u>.

**APPENDIX**

Pertinent excerpts from the affidavit of Attorney Sankaran:

* * *

6. On August 9, 2001, I went into the civil clerk's office at the United States District Court for the District of Rhode Island and asked the clerk at the counter how cases were assigned upon filing. The clerk told me that cases are randomly assigned to judges at the time of filing based on a computer program used by the office. On August 14, 2001, I called the civil clerk's office at the United States District Court for the District of Rhode Island and asked under what circumstances a case could be reassigned once it had been assigned to a particular judge pursuant to the computer program. I was informed that a case cannot be transferred to another judge unless the judge originally assigned makes such a request.

7. True and accurate copies of a letter from Stephen Sheehan, counsel for Joseph Obert ("Obert"), to the United States District Court for the District of Rhode Island civil clerk's office dated July 5, 2001, and the Amended Civil Action Cover Sheet are attached hereto as "Exhibit E." On August 17, 2001, Mr. MacLeish and I called Mr. Wistow on the telephone to inquire about the circumstances surrounding the Amended Civil Action Cover sheet. Mr. Wistow refused to provide an explanation.

* * *

-22-

9. On August 3, 2001, Obert filed motion for a temporary restraining order and preliminary injunction in this case. Elizabeth McDonough Noonan, local counsel for Republic Western informed me that she received the motion on August 6, 2001. On Tuesday, August 7, 2001, I received a telephone call from Mr. Wistow informing me that the hearing on the motion for a temporary restraining order would take place on August 9, 2001, at 2:00 p.m. Republic Western filed its opposition to Obert's motion on August 9, 2001, with accompanying affidavits.

10. On August 9, 2001, I, along with Mr. MacLeish of Greenberg Traurig LLP, and Todd White, Esq., of Adler Pollock & Sheehan, P.C., appeared on behalf of Republic Western for the hearing on the motion for a temporary restraining order. Also present were Mr. Wistow representing Obert and Fred Polacek, Esquire, representing Joseph Fratus, Stephanie L. Fratus and Carissa M. Fratus (collectively "the Fratuses"). The hearing on Obert's motion for a temporary restraining order was not held in Judge Lagueux's courtroom, but rather in Judge Lagueux's chambers without a stenographer. In addition to Judge Lagueux and counsel for the parties, there were two other individuals present at the hearing in chambers who appeared to be employed by the Court.

11. When the hearing began, Judge Lagueux allowed Mr. Wistow to present his argument. Mr. Wistow's presentation took approximately twenty (20) minutes. At the conclusion of Mr. Wistow's presentation, Judge Lagueux stated that he would hold Obert's motion in abeyance pending the decision of Judge Gorton on Obert's motion to dismiss and/or transfer in the case styled *Republic Western Insurance Company v. Joseph Obert*, United States District Court for the District of Massachusetts Civil Action No. 01-40125 NMG (hereinafter the "Massachusetts Coverage Action"). Judge Lagueux also stated that he was confident that Judge Gorton would transfer

-23-

the Massachusetts Coverage Action to Rhode Island and gave counsel for Obert permission to represent to Judge Gorton that Judge Lagueux thought that the Massachusetts Coverage Action belonged in Rhode Island. In addition, Judge Lagueux stated that he was going to call Judge Gorton on the telephone and tell him to transfer the case.

12. During the hearing, Judge Lagueux repeated several times, without discussing the merits as to why, "This case belongs here." Judge Lagueux never substantively discussed the matters of venue and appropriate forum which were raised in the papers filed by Republic Western. Judge Lagueux also declined to allow Republic Western's counsel a meaningful opportunity to be heard on the motion for a temporary restraining order and the issue as to whether the case should be in Rhode Island or Massachusetts.

13. Also during the hearing, Mr. MacLeish inquired as to how the Rhode Island Action was assigned to Judge Lagueux. Judge Lagueux stated that he was offered the case because he was involved in related matters. He also stated that he was the only judge who knew anything about the case.

14. During the course of the hearing, Mr. MacLeish attempted to show Judge Lagueux the actual "Buff Copy" of the Rental Contract signed by Obert. Following a brief exchange regarding the document, Judge Lagueux stated that Republic Western has made misrepresentations and false statements in the past. Judge Lagueux also repeated again that the case belonged in Rhode Island, again without presenting any reasons as to why and without allowing Republic Western to be heard on the matter, and stated that he was going to see this case to the end.