# United States Court of Appeals
## For the First Circuit

No. 04-1831
    04-1861

MARY CHRIS SHEPPARD; ROBERT SHEPPARD,

Plaintiffs, Appellees, Cross-Appellants,

v.

RIVER VALLEY FITNESS ONE, L.P. d/b/a RIVER VALLEY CLUB; RIVER
VALLEY FITNESS ASSOCIATES, INC.; JOSEPH ASCH; ELIZABETH ASCH;
RIVER VALLEY CLUB GP LLC,

Defendants,

W. E. WHITTINGTON IV,

Appellant, Cross-appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

W. E. Whittington IV for appellant/cross-appellee.
    Kelly E. Dowd, with whom Upton & Hatfield, LLP, was on brief,
for appellees/cross-appellants.

October 21, 2005

**LIPEZ, Circuit Judge**.  This is an appeal of a monetary sanction that was imposed by the magistrate judge on defendants' lawyer, William E. Whittington IV, for discovery misconduct.  The court required that Whittington personally compensate the opposing parties for the attorney's fees and costs incurred in opposing a protective order that he had obtained.  Citing the injury to his professional reputation, Whittington also appeals certain findings of fact made by the magistrate judge in support of the monetary sanction.  The district court affirmed the sanction and most of the findings.  After a careful review of the record, we affirm the sanction but vacate a finding that the district court affirmed.

## I.

To explain the genesis of the sanction and findings, we must review the history of the underlying case.  River Valley was a health club located in Hanover, New Hampshire.  In early 1999, Mary C. Sheppard, the principal plaintiff in this case, brought a claim of sexual harassment against defendants (in essence, the club and its owners, Joseph and Elizabeth Asch) for offensive incidents she said she experienced while working at the club.  The club's manager, Robert Aubin, filed a lawsuit of his own, alleging that he was fired in retaliation for reporting Sheppard's complaints about harassment.[1]  In both cases, defendants denied all of the

---

[1] That suit, Aubin v. River Valley Fitness One, LP, was assigned to a different district-court judge.

-2-

allegations and filed counterclaims against Sheppard and Aubin, accusing them of conspiring to fabricate their lawsuits. In early 2000, the two cases were consolidated for discovery.

In August 2000, defendants and Aubin discussed settling their dispute (and, shortly thereafter, did settle). The sanction in this case and the findings all derive from three instances in which Whittington made claims about the settlement process in the Aubin case.

**A. Whittington's statements to the Aubin court on August 21, 2000**

On August 15, 2000, Whittington sent a letter to Aubin's counsel to, as the letter put it, "summarize our settlement discussions." The letter opened by stating that "[t]he parties will settle on the following terms (subject to details being worked out on the open items below)." The letter provided that "Aubin would agree to a stipulated judgment of $50,000" in River Valley's favor, but that Aubin need pay only $100 of that amount for release and satisfaction. Also, because River Valley was keenly interested in getting information from Aubin to help with its dispute with Sheppard, Aubin would provide details of his discussions with Sheppard about their claims. In addition, River Valley wanted corroborating information and documents from two other people, Barney Brannen and Jack Panzica, who River Valley believed were involved with the alleged conspiracy against it; to that end, River Valley had asked the court for subpoenas. The letter stated that

-3-

the parties would not file the stipulated settlement with the court until after deposing those two witnesses. In the meantime, the parties "will jointly inform the Court we're close to settlement . . . and tell the Court that it would help the parties' settlement negotiations to get a prompt ruling on the Brannen/Panzica motions, which Aubin will now join." Whittington stressed the importance that River Valley placed on Aubin's information by underlining the following sentence: "<u>The settlement is contingent upon defendants' satisfaction that Aubin is assisting defendants in good faith to the best of his ability</u>." The letter closed by stating: "If the above is satisfactory, please indicate by signing below and returning a copy of this letter." The next day, August 16, Aubin's counsel signed her agreement and returned the letter.

On August 21, 2000, Whittington, as promised, told the Aubin court that the parties were close to settlement:

> The parties advise the Court that they have seriously discussed settlement, that they believe the prospects for settlement are excellent after resolution of the two pending motions [to get information from Brannen and Panzica], and that resolution of the motions will be helpful to the settlement process.

On October 3, 2000, having resolved the Brannen and Panzica issues[2] and having obtained a satisfactory affidavit from Aubin,

---

[2] On August 21, 2000, Panzica's attorney told the court that his client had no documents responsive to the subpoena. On September 13, 2000, the court ordered Brannen to turn over his responsive documents, Brannen soon did so, and he was deposed on September 29.

Whittington authorized Aubin's counsel to file the stipulated judgment with the court and release other settlement documents from escrow. On October 4, 2000, the district court entered judgment in the Aubin case.

**B. Whittington's letter to Sheppard's counsel on October 6, 2000**

Whittington then tried to put the settlement in Aubin to his clients' advantage in Sheppard. On October 6, 2000, Whittington wrote a letter to Sheppard's counsel, informing her of the outcome in the Aubin case. Whittington's letter did not say that River Valley had agreed to accept $100 as satisfaction of a much larger judgment; the letter referred simply to the "$50,000 judgment." Whittington wrote that it was "clear" that, when presented with the "extensive evidence" marshaled by River Valley, "Aubin and his counsel saw that the litigation had only one possible outcome." The letter explained that River Valley was now also privy to Aubin's "inside perspective." Referring to "the press's continuing strong interest in the litigation," the letter warned that Sheppard might be portrayed in an unflattering light "once all the facts came out." Consequently, the letter advised, "[r]eaching a negotiated settlement promptly" would help to avoid that unpleasant outcome. The letter expressed River Valley's willingness to settle for payment of $50,000 and an affidavit from Sheppard backing up River Valley's version of the disputed events.

## C. Whittington's motion for a protective order on March 29, 2001

Faced with Whittington's letter and wanting to see the settlement agreement for herself, Sheppard's counsel filed a motion to compel its production. On March 29, 2001, Whittington responded by moving for a protective order, seeking to keep the terms of the agreement secret. Claiming that the settlement agreement in Aubin had "no bearing on any of the issues in this case," Whittington offered to let the court review the documents in camera to determine for itself whether they were relevant to the Sheppard case. If the court did order the agreement's production, Whittington asked that access be limited to Sheppard's counsel.

On March 30, 2001, the magistrate judge in the Sheppard case granted the protective order to the extent that it sought counsel's-eyes-only review of the settlement agreement. On April 23, 2001, having now received and read the agreement, Sheppard's counsel filed a motion for relief from the protective order, seeking full freedom to disclose the agreement, and for "sanctions pursuant to Rule 26(c)," which governs protective orders.

That motion led to the sanctions at issue in this case. On May 23, 2001, the magistrate judge ordered the settlement agreement to be unsealed. Referring to what it called a "lack of forthrightness" on Whittington's part and "[h]alf-truths about the Aubin settlement," the magistrate judge also scheduled a hearing on "appropriate sanctions, if any." At the end of that hearing on

-6-

June 13, 2001, the magistrate judge said: "There will be at least one sanction. Mr. Whittington is going to demonstrate to me that he has taken at least 10 hours specifically of CLE related to professional conduct responsibility rules within the next three months." Then, addressing the lawyer whom Whittington had retained for the hearing, the magistrate judge added: "And Mr. Daschbach, you are to tutor him with regard to how you practice law in the State of New Hampshire and in this court."

On September 27, 2001, the magistrate judge issued his order on sanctions, making three main findings. First, the magistrate judge found that "Whittington misled the court when he argued that the Aubin settlement is irrelevant to the issues in this case." Aubin's agreement to cooperate with River Valley was "directly relevant to Aubin's credibility." Second, the magistrate judge found that "Whittington intentionally misled the plaintiffs" in his October 6, 2000 letter "to intimidate them into a $50,000 settlement in this case." Third, the magistrate judge found that Whittington sought the protective order so as to "conceal his deceptive conduct in the Aubin case" (i.e., telling the Aubin court that the parties were merely "close" to a settlement when, in the magistrate's view, they had already "reached a settlement in principle"). The magistrate judge concluded that Whittington's motion for a protective order had not been substantially justified and ordered a monetary sanction under Fed. R. Civ. P. 37(a)(4):

specifically, Whittington "shall personally compensate the plaintiffs for their expenses, including reasonable attorney's fees, incurred in connection with their opposition to and the motion for relief from the protective order."

On January 22, 2004, the district court affirmed the sanction imposed by the magistrate judge. The court also found that the record "fully support[ed] the Magistrate Judge's . . . findings and conclusions," with one exception. The district court rejected the magistrate judge's finding that Whittington sought a protective order partly "to conceal his deceptive conduct in the Aubin case." Referring to Whittington's suggestion that the magistrate judge inspect the settlement agreement in camera, the district court noted that this was "hardly the kind of offer likely to be made by one bent upon concealing his misconduct." The district court then referred the matter to the magistrate judge for calculation of attorney's fees.

On April 27, 2004, the magistrate judge issued an order assessing $6,538 in fees. On May 25, 2004, the district court entered judgment in the case. On June 16, 2004, Whittington filed this timely appeal, asking that we vacate the sanctions and set aside the magistrate judge's findings about his misconduct before the Aubin court and in his letter to Sheppard's counsel.

## II.

We have jurisdiction to review the sanction in this case

as an appeal from a final decision of the district court. See 28 U.S.C. § 1291. We can review the underlying factual findings as well. "The imposition of a sanction on an attorney is universally regarded as an order, and, if an appellate tribunal has jurisdiction to review such an order, its examination will encompass the underlying findings." Williams v. United States (In re Williams), 156 F.3d 86, 90 (1st Cir. 1998) (footnote omitted). In certain circumstances, even factual findings by themselves (i.e., unattached to any sanctions) can be appealed because of the "serious practical consequences" they may have on counsel's reputation. Obert v. Republic W. Ins. Co., 398 F.3d 138, 143 (1st Cir. 2005), remand order modified, 2005 U.S. App. LEXIS 4793 (1st Cir. Mar. 24, 2005).

"Like the district court, we review [the magistrate judge's] factual findings under the 'clearly erroneous' rubric." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999). As for the magistrate judge's decision itself, "[w]e have long recognized that the decision as to whether discovery sanctions are warranted and the choice of what sanctions should be imposed are matters within the sound discretion of the trial court. As such, review of . . . discovery sanctions is only for abuse of discretion." United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir. 2003), cert. denied, 124 S. Ct. 2432 (2004) (internal quotation marks and citations omitted). "An abuse of discretion

occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Id. (internal quotation marks omitted). In the Rule 11 context, the Supreme Court has explained that a court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990); see also Obert, 398 F.3d at 143. We apply that logic to our review of the sanction and findings at issue here.

## A. Factual findings

### 1. Whittington's statements to the Aubin court

We first examine the magistrate judge's finding that Whittington misrepresented the settlement status of the Aubin case when he told the Aubin court that the parties were close to settlement ("the prospects for settlement are excellent") but had not yet settled.

Before we reach the merits of this issue, however, we reject at the outset Whittington's argument that the magistrate judge somehow lacked jurisdiction to make findings (which Whittington here calls "sanctions") about his conduct in the Aubin case. These cases--Sheppard and Aubin--are closely related. They have a common defendant, River Valley. Aubin alleged that he was

-10-

fired in retaliation for reporting Sheppard's complaints about harassment. The cases were consolidated for discovery before the same magistrate judge.

True, it would be odd for Sheppard to win her attorney's fees and costs for Whittington's conduct in a case to which she was not a party. However, that is not what happened here. Sheppard sought compensation for costs incurred in challenging the protective order in <u>her</u> case. In considering that request, the magistrate judge had to look at Whittington's conduct in <u>Aubin</u> to evaluate what Whittington was trying to achieve with a protective order in <u>Sheppard</u>. Moreover, Whittington himself made the events surrounding the <u>Aubin</u> settlement an issue in this case when he decided to try to use that settlement to encourage settlement here, too. The magistrate judge's findings of fact, including the finding about Whittington's conduct in the <u>Aubin</u> case, were all related to his decision to impose sanctions for Whittington's discovery misconduct in this case.

We now examine the merits of the finding at issue. In his September 27, 2001 order, the magistrate judge said that Whittington, when he told the <u>Aubin</u> court that the parties were close to settlement instead of settled, had engaged in "deceptive conduct" and "misrepresentations" before the <u>Aubin</u> court. The district court, for its part, said that Whittington's conduct

> certainly qualifies as "sharp practice," well outside the
> boundaries of complete and full candor owed to the court

-11-

by those who practice in this district.[3] At worst, counsel intentionally sought to mislead the court with regard to the actual settlement status of the Aubin case in order to obtain rulings on pending motions that otherwise probably would not have been made.

In this instance, we cannot agree with such a harsh view of Whittington's conduct.

First and foremost, we take seriously River Valley's concerns, expressed in the letter to Aubin's counsel, about being able to corroborate Aubin's testimony with information obtained from Brannen and Panzica. The magistrate judge dismissed that concern, writing that "[n]othing in the settlement documents even suggests that this is true." But Whittington's letter to Aubin's

---

[3] The Rules of Professional Conduct of the New Hampshire Supreme Court are the relevant ethical standards for lawyers practicing before the United States District Court for the District of New Hampshire. See D.N.H.R. 83.5 DR-1. All lawyers have a duty of candor to the tribunal, which is violated by "knowingly" making a "false statement of material fact or law to a tribunal." N.H. Rules of Prof'l Conduct R. 3.3(a)(1).

Although neither the magistrate judge nor the district court referred to specific rules of New Hampshire's Rules of Professional Conduct in their analysis of Whittington's conduct, it is apparent to us that the rules informed their analysis of that conduct. In their briefs on appeal, the parties also rely on those rules and commentary to the ABA's Code of Professional Responsibility, see infra, fn. 5, in defending and criticizing Whittington's conduct. We also refer to the rules and that commentary in evaluating Whittington's conduct. However, in making his findings about Whittington's conduct, the magistrate judge did not explicitly make a finding that a specific rule of New Hampshire's Rules of Professional Conduct had been violated and neither did the district court. We take a similar approach here, focusing our analysis only on the factual findings of the magistrate judge. As noted above, factual findings themselves about unprofessional conduct can be the subject of appeal because of the "serious practical consequences" they have on counsel's reputation. Obert, 398 F.3d at 143.

counsel could hardly have been clearer when it stated that "settlement is contingent upon defendants' satisfaction that Aubin is assisting defendants in good faith to the best of his ability." That statement came at the end of a paragraph stressing River Valley's interest in Aubin's "actions/discussions" with Brannen and Panzica. Two paragraphs later, the letter referred to the importance of "getting a ruling on the Brannen and Panzica motions, and defendants receiving their documents and taking their depositions." Read fairly in context, these statements are evidence of River Valley's reluctance to settle until it had exhausted its ability to corroborate Aubin's affidavit. As Whittington argues, "no prudent litigant in these circumstances would have given up leverage by settling just before obtaining the cooperation it was bargaining for." Thus it was fair for Whittington to characterize the parties as being close to settlement after the August 15, 2001 letter, but not yet settled.

The magistrate judge placed considerable emphasis on the notion that the parties would have reached a settlement regardless of what happened with the pending discovery motions. At the sanctions hearing, Whittington said that he believed that the case would have settled even if River Valley had been unable to corroborate Aubin's affidavit. But Whittington's post hoc speculation, even if accurate, does not tell us much about how close the parties were to a final settlement. To the contrary, in

-13-

almost any negotiation, a lawyer would presumably begin with various ambitions that he hopes to realize in the end--a best-case scenario, as it were. Yet at the same time, he may be able to concede privately that his client is still better off settling even if it proves too difficult to secure some particular favorable concession or other benefit. Presumably, Whittington simply meant that River Valley's ability to corroborate the affidavit of an untrusted adversary was one such aim: valuable if he could get it, but not a deal-breaker if he could not. Importantly, Whittington never said that River Valley would have settled if the information from Brannen and Panzica had fatally undermined Aubin's affidavit or critically impeached his credibility.

We are given further pause by the magistrate judge's own somewhat varying descriptions of the settlement status in Aubin. At one point, for example, the magistrate judge describes the August 15, 2001 letter as, if not a true settlement, then at least a "settlement in principle." A "settlement in principle" may well have justified Whittington's statement to the court that "the prospects for settlement are excellent after resolution of the two pending motions." In the same vein, the magistrate judge wrote: "Even if the Aubin matter was not settled on August 16, it was settled prior to the court's September 12, 2000 ruling on the Brannen motion." But in that case, then, it was not wrong for Whittington to describe the parties as close to settlement on

-14-

August 16. Anyway, it seems to us that a finding of ethical misconduct, so fraught with consequences for a lawyer's professional reputation, should not rest on such fine distinctions. If the court has trouble coming to an unqualified conclusion about the parties' settlement status, then Whittington can hardly be charged with telling a knowing falsehood--the standard set forth by the Rules of Professional Conduct--under such circumstances.

Similarly, we are reluctant to affirm a finding of unethical conduct on the basis of a foray into contract law. The district court described the letter agreement as being a

> settlement subject to a few conditions subsequent. . . . Had those conditions not been met, perhaps defendants could rescind the agreement and declare the settlement null and void.

In the district court's view, "there was nothing of substance left to negotiate," although in truth the settlement may not have been "fully accomplished." This conclusion, though--that the letter agreement may have had some legal force--seems to us to miss the point. Even though the letter agreement may have been enforceable in some circumstances, many contingencies remained. The most crucial legal documents--the mutual releases, Aubin's affidavit, the stipulated judgment--had not even been drafted, let alone signed or delivered. In short, given the evident uncertainties that remained, we conclude that Whittington gave a reasonably apt summary of the situation when he advised the court that settlement with Aubin was close. The magistrate judge's finding to the

contrary was erroneous.

## 2. Letter to Sheppard's counsel

In this second finding, the magistrate judge found that "[i]n his October 6 letter, Whittington intentionally misled the plaintiffs into believing that Aubin did commit to a $50,000 payment in order to intimidate them into a $50,000 settlement in this case."[4]  In that letter, Whittington wrote:

> Attached please find a Stipulation to Judgment signed by Judge Barbadoro on October 4 in the amount of $50,000 in RVC's [River Valley's] favor in the Aubin case.  It is clear that, when presented with the extensive evidence that we have compiled in support of our counterclaims against him and our motion for summary judgment on his own claims, Aubin and his counsel saw that the litigation had only one possible outcome.
>
> The $50,000 judgment, and the likelihood that it will soon become public, prompt us to re-visit with you the subject of settlement.

He then stated River Valley's willingness to settle for "[p]ayment of $50,000 by the Sheppards to [River Valley]," among other demands similar to the Aubin settlement (for example, a truthful affidavit confirming River Valley's version of events).  He never disclosed that the true cost of the settlement for Aubin was $100.

New Hampshire's Rules of Professional Conduct impose a duty of truthfulness on lawyers with respect to people other than

---

[4] The magistrate judge also noted that Whittington made this representation not only to opposing counsel, but to the court as well.  In River Valley's motion for summary judgment, a footnote referred to the $50,000 judgment without saying that it could be satisfied for $100.

the tribunal.  Again, the Rules prohibit knowing falsehoods.  See N.H. Rules of Prof'l Conduct R. 4.1(a) ("In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person. . . .").  The commentary accompanying New Hampshire Rule 4.1 in effect at the time states that "[m]aking a false statement includes the failure to make a statement in circumstances in which nondisclosure is equivalent to making such a statement."  N.H. Rules of Prof'l Conduct R. 4.1, ABA Model Code Comments (2000).  The magistrate judge's finding that Whittington's omission constituted a misrepresentation is consistent with the commentary's elaboration of Rule 4.1.[5]

---

[5] Before the ABA promulgated the Model Rules of Professional Conduct in 1983, which many states have now adopted wholesale or piecemeal, the ABA had promulgated the Code of Professional Responsibility, also known as the Model Code.  Following a period during which New Hampshire lawyers were subject to the Model Code, the New Hampshire Supreme Court adopted the present Rules of Professional Conduct, also known as the Model Rules, effective February 1, 1986.  There is ABA commentary to both the Model Code and the Model Rules.  Oddly, publications setting forth the New Hampshire Rules of Professional Conduct include commentary that accompanied the now supplanted Code of Professional Responsibility, i.e. the "ABA Model Code Comments".  Although the New Hampshire Supreme Court has never formally adopted these comments, it has stated that "Although the text of each rule is authoritative, the comments are intended as guides to interpretation."  Carpenito's Case, 139 N.H. 168, 173 (N.H. 1994).
    Therefore, the Model Code commentary can inform judgments about the professional conduct of an attorney in New Hampshire.  In fact, this is how it appears the New Hampshire Supreme Court uses the "ABA Model Code Comments," in the wake of the switch from the Code to the Rules.  See e.g., Carpenito's Case, supra; In re Coffey's Case, 880 A.2d 403, 413 (N.H. 2005); In re Richmond's Case, 152 N.H. 155, 158-59 (N.H. 2005).  As we noted in footnote 3,

It is evident from the letter, read in its entirety, that Whittington wanted Sheppard to believe that the Aubin case had settled for a payment of $50,000.  True, Whittington did not say so explicitly.  However, he managed to convey that impression anyway by selecting certain words and omitting certain details with studied precision.  As the district court wrote: "[T]he words used (and not used) by Whittington seem carefully chosen, and, if dissected and construed from a minimalist point of view, are defensible as 'literally true.'  But it is likewise plainly apparent that those words were meant to convey more."  After all, the letter's purpose--to encourage Sheppard to pay $50,000 to settle her case--depended considerably on leaving the impression that Aubin, in a similar position, had already committed to doing the same thing.

We are not saying that Whittington had a general obligation to disclose the full terms of the Aubin settlement to Sheppard just by mentioning the fact of the settlement.  However, Whittington did more than that.  He chose to disclose the face dollar value of the judgment against Sheppard without disclosing the real dollar value of the settlement, in an attempt to induce Sheppard to settle on terms comparable to the Aubin judgment.

---

that appears to be what the magistrate judge and the district court did here.  The parties took a similar approach on appeal, and we do the same here.  (So far as we can tell, the New Hampshire Supreme Court has not addressed the status or use of the commentary to the ABA's Rules of Professional Conduct.)

Having made that choice, Whittington had an obligation not to misrepresent, affirmatively or by omission, the true value of the settlement. In other words, Whittington's overall conduct created the very circumstances under which his failure to act, i.e. his failure to inform Sheppard's counsel of the real dollar value of the settlement, became a misrepresentation. Therefore, the magistrate judge correctly concluded that Whittington's too-artful words "intentionally misled the plaintiffs into believing that Aubin did commit to a $50,000 payment in order to intimidate them into a $50,000 settlement in this case."[6]

---

[6] In defending his conduct, Whittington refers to the following language from the ABA Model Code Comments:

> A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentation can also occur by act as well as deed. Making a false statement includes the failure to make a statement in circumstances in which nondisclosure is equivalent to making such a statement. Thus, where a lawyer has made a statement that the lawyer believed to be true when made but later discovers that the statement was not true, in some circumstances failure to correct the statement is equivalent to making a statement that is false.

N.H. Rules of Prof'l Conduct R. 4.1, ABA Model Code Comments (2000). Whittington emphasizes the statement that a lawyer "generally has no affirmative duty to inform an opposing party of relevant facts." Also, he asserts that the last sentence -- which outlines a situation where a lawyer makes a statement he later discovers to be false -- describes the only circumstances in which a nondisclosure is equivalent to a false statement.

The language Whittington cites -- that "[m]aking a false statement includes the failure to make a statement in circumstances

## B. Monetary sanction

In the magistrate judge's view, Whittington's "true purpose for seeking the protective order" was to conceal his unethical conduct, as the magistrate judge saw it, reflected in his statements to the Aubin court and his letter to Sheppard's counsel. Like the district court, we are not persuaded by this account of Whittington's motivations. As the district court wrote:

> Whittington did, after all, offer to file the Aubin settlement documents with the court for in camera inspection--hardly the kind of offer likely to be made by one bent upon concealing his misconduct. Whittington vigorously denies any such motive, and his actions generally support his denials, as does the general tenor of the record.

Also, we agree with the district court's observation that "[i]t is highly unlikely that [Whittington] was motivated to file the motion for protective order to conceal misconduct he did not (and still does not) recognize as misconduct." Moreover, we have now concluded that Whittington had no reason to conceal his statements before the Aubin court. In the end, however, his motivation for seeking the protective order does not matter. Whatever his motivation, Whittington's arguments for the order, simply taken at

---

in which nondisclosure is equivalent to making such a statement" -- actually captures the wrongfulness of his conduct. The manner in which Whittington drafted his letter to Sheppard's counsel created a situation in which his failure to make a statement constituted a false statement. Simply because his own actions created the circumstances that gave rise to his duty to disclose does not relieve him of that duty. Finally, it is plainly obvious that the last sentence of the paragraph is one example of a nondisclosure that is equivalent to a false statement, not the only example.

face value, were so unjustified that he must personally bear the costs of opposing it. The monetary sanction imposed by the magistrate judge must therefore stand.

Motions for protective orders are first governed by Rule 26(c), which provides for the award of expenses if the motion fails:

> If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Fed. R. Civ. P. 26(c). Rule 37 provides in relevant part:

> If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording opportunity to be heard, require the party . . . whose conduct necessitated the motion [here, Whittington] . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A) (emphasis added). In a similar context, the Supreme Court has said that "substantially justified" does not mean "justified to a high degree," but only "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted) (construing government's obligations under Equal Access to Justice Act).

-21-

The specific wording of Whittington's motion for protective order is important. Whittington wrote:

> 3. Robert Aubin settled his claims by and against defendants--in a different case from this case--in a confidential settlement agreement. That settlement agreement has no bearing on any of the issues in this case, and is not calculated to lead to admissible evidence.
>
> 4. Settlement agreements with related parties--absent a showing of identity of issues or factual stipulations having bearing on the subsequent case--are generally held inadmissible as not relevant. Centillion Data Systems, Inc. v. Ameritech Corp., 193 F.R.D. 550 (S.D. Ind. 1999); Doe v. Methacton School Dist., 164 F.R.D. 175 (E.D. Pa. 1995); Thornton v. Syracuse Saving Bank, 961 F.2d 1042 (2d Cir. 1992); Griffin v. Mashariki, 1997 WL 756914 (S.D.N.Y. 1997).

Whittington argues in a conclusory way that these four cases substantially justified his position. He complains in passing that the magistrate judge never even noted that he had cited them before imposing sanctions.

We have examined the cases and find them wanting. The general proposition for which Whittington cites them is valid. However, his motion is more notable for what it does not acknowledge: namely, that settlement agreements may be used to impeach a witness like Aubin, whose testimony--which, to be sure, was supposed to be "truthful"--entitles him to a $49,900 discount on a judgment of $50,000.[7] This omission is all the more glaring given that the first case he cites makes that very point. In

---

[7] It appears that, for some reason, Aubin never even paid the $100 that he owed.

<u>Centillion Data Systems</u>, the court carefully noted that "evidence of settlement offers and acceptances . . . may be admissible for other purposes 'such as proving bias or prejudice of a witness.'" 193 F.R.D. at 553 (quoting Fed. R. Evid. 408). As Whittington had to know, that is precisely the reason why Sheppard's counsel was interested in seeing the settlement agreement for herself. Therefore, while Whittington may have felt no ethical concerns about revealing his representations to the <u>Aubin</u> court or his letter to Sheppard's counsel, he should not have fought disclosure of a settlement agreement so obviously relevant to the impeachment of Aubin's testimony in a future trial. The magistrate judge's call on this point was exactly right.

## C. Arguments rejected for procedural defects

At the June 13, 2001 hearing, the magistrate judge announced that he would impose certain nonmonetary sanctions on Whittington, requiring at least 10 hours of CLE credits and tutoring from Whittington's attorney in ethics. Although Whittington says that he is appealing these particular sanctions on several grounds, he has not preserved his right to do so. He did not object to these sanctions at the hearing or shortly thereafter in the time provided by Fed. R. Civ. P. 72(a).[8] When he filed

---

[8] Rule 72(a) provides, for nondispositive rulings like this one: "Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely

objections to the magistrate judge's September 27, 2001 order, he did not mention the nonmonetary sanctions at all. For that reason, presumably, the district court did not review them in its January 22, 2004 ruling. Neither will we. "It is a firmly settled rule that a party's appeal of a magistrate judge's order to the district court delimits his right to further appellate review." Phinney, 199 F.3d at 3. Whittington's failure to appeal these nonmonetary sanctions when he first had the chance prevents him from challenging them now.[9]

Whittington is not alone in suffering from a self-inflicted wound on appeal. On April 12, 2004, the magistrate judge issued his order fixing the amount that Whittington would have to pay in attorney's fees. Sheppard now cross-appeals that order as being too small, but she failed to object to that order within Rule 72(a)'s time limit. Before briefs had been filed in this case, Whittington moved to dismiss Sheppard's cross-appeal as unpreserved. We provisionally denied that motion and ordered the

---

made."

[9] According to Whittington, these nonmonetary sanctions are less important to him than the factual findings that we have addressed. In any event, as we explained, even if the specific nonmonetary sanctions are not appealable, the findings themselves are because of their effect on the lawyer's professional reputation and because they contributed to the imposition of monetary sanctions for Whittington's discovery misconduct in this case. Although we have vacated the finding based on Whittington's conduct in the Aubin case, there remained ample grounds, as we have explained, for the magistrate judge's imposition of a monetary sanction for discovery misconduct.

parties to "address the issue raised by the motion papers in their relevant briefs." Sheppard completely failed to address the issue in her opening brief, only belatedly doing so in a reply brief. "It is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992). At this point, the issue raised by Sheppard's cross-appeal has been forfeited twice-over, and we decline to consider it on the merits.

## III.

For the reasons stated, we **affirm** the award of a monetary sanction assessed personally against Whittington. We also **affirm** the magistrate judge's finding that Whittington's letter to Sheppard's counsel "intentionally misled the plaintiffs into believing that Aubin did commit to a $50,000 payment in order to intimidate them into a $50,000 settlement in this case." We **vacate** the magistrate judge's finding that Whittington misrepresented the settlement status of the Aubin case when he told the Aubin court that the parties were close to settlement but had not yet settled. Costs are taxed in favor of the appellee.

**So ordered**.