Opinion for the court filed by Circuit Judge O’MALLEY. Dissenting opinion filed by Circuit Judge NEWMAN.
*1369 O’MALLEY, Circuit Judge.
Plaintiff Tesco Corporation (“Tesco”) and interested parties-appellants Glenn A. Ballard, Jr. and John F. Luman, III (collectively “the Attorneys”) filed this appeal from a decision of the United States District Court for the Southern District of Texas dismissing Tesco’s patent infringement suit with prejudice pursuant to the court’s inherent authority to sanction. Tesco Corp. v. Weatherford Int’l, Inc., No. H-08-2531, 2014 WL 4244215 (S.D.Tex. Aug. 25, 2014) (“Sanctions Order ”). During the pendency of the appeal, Tesco and defendant-appellees National Oilwell Var-eo, L.P., Offshore Energy Services, Inc., and Frank’s Casing Crew & Rental Tools, • Inc. (collectively “NOV”) entered into a settlement resolving all outstanding issues. The Attorneys also participated in the settlement, with the parties and all counsel signing mutual releases. The Attorneys contend that, despite the settlement, the harm to their reputation from the district court’s opinion justifies our continued jurisdiction over the appeal. Because we find that there is no remaining case or controversy to adjudicate, we dismiss the appeal.
BACKGROUND
I
Tesco filed a complaint against NOV for infringement of U.S. Patent Nos. 7,140,443 and 7,377,324 on August 19, 2008. These patents involve a tool used in well drilling technology — an apparatus and method for handling sections of pipe used for lining a well bore. Id. at *1. The purportedly innovative aspect of the technology is the location of the point of connection for “link arms,” which connect the Case Drilling System to the drill pipe that will be placed in the well bore. U.S. Patent No. 7,377,-324 col. 1 1.31 — col.2 1.27. In the prior art systems, the link arms attached to the top drive of a Case Drilling System, but the patents-at-issue described a Case Drilling System with the link arms attached to the lower pipe engaging apparatus. Id. By lowering the point of connection, the link arms could better reach and grab sections of the pipe.
In response to Tesco’s complaint, NOV filed an answer, counterclaims, and a request for attorney’s fees under 35 U.S.C. § 285. NOV subsequently filed a series of motions to compel requesting, in part, information about any relevant documents that evidence what occurred during the six month period prior to the on-sale bar date of November 2002. Tesco claimed that it had already disclosed all relevant documents, but nevertheless eventually released a series of printed invoices for brochures created shortly before November 2002. In light of these invoices, NOV specifically requested any information about the brochures, including the brochures themselves, but Tesco denied the continuing existence of these brochures. During a status conference, the district court asked Tesco about the brochures, and Ballard, Tesco’s attorney, insisted that Tesco had produced all responsive documents. Joint Appendix (“J.A.”) 10703. Up until trial, NOV continued to file motions requesting the brochures, and Tesco continued to deny their existence. At the pretrial conference, the district court again reiterated his concern about possible non-production of documents, stating that “if there are documents that have been pro-ddeed to others but not the adversaries, that’s, obviously, very serious conduct.” J.A. 20111-12.
Trial began on October 25, 2010. On October 28, NOV cross-examined one of the named inventors of the patents-at-issue, Kevin Nikiforuk. NOV questioned Nikiforuk about an image in Exhibit 851, which NOV claimed was the missing bro *1370 chure from August 2002 that Tesco contended no longer existed. NOV explained that it found the brochure in a box of documents from a prior litigation between Tesco and one of the defendants, and placed the document in their pretrial exhibit list. During questioning, Nikiforuk agreed that, even though he could not see the image clearly, the link arms in the image were attached to the pipe engaging apparatus. The district court instructed Nikiforuk not to speculate, and to answer only if he authoritatively could identify the connection point. Nikiforuk again stated that the image appeared to show the claimed invention.
Tesco objected to this testimony and asked that it be stricken as speculative and irrelevant. Ballard then requested time to determine why the brochure was not produced during discovery and if it actually' represented the claimed invention. The next day, Ballard informed the court that Tesco had produced a low-resolution, black-and-white, single-page version of the brochure during discovery, and argued that none of the defendants had asked for a clearer version of the produced document. Ballard then told the court that the image in the brochure did not show the claimed invention. In response, NOV requested a curative instruction and a sanction switching the burden of proof due to Tesco’s failure to disclose an original, legible version of the brochure. Certain defendants also refused an offer of a mistrial because they did not want to give Tesco the opportunity to prepare Nikiforuk for a new trial, insisting that they preferred entry of judgment to a new trial. Ballard agreed to continue to investigate the brochure over the weekend. J.A. 20724.
On November 1, Ballard explained that he had done further research on the brochure, and that Luman had contacted the alleged designers of the brochure. Ballard then made the following declaration to the court:
As I told the Court, I would get to the bottom of this August brochure issue, 4008, over the weekend. We did so. We found the animator who actually did the rendering in question. That animator is Don Carr [sic]. He says unequivocally that this is not the invention in the brochure. We explained that in the papers we filed this morning. He left Tesco four years ago. We didn’t have his name until this weekend. He lives in Canada. But if the trial — if they want to continue to maintain that 4008 is the invention, we’re going to want to call him at some point in the trial.
J.A. 20885 (emphasis added). Ballard again argued that Tesco sufficiently produced the image in black-and-white form, but the district court disagreed, stating that the black-and-white version was not equivalent to the color version, especially with regards to the point of connection for the link arms. Ballard then continued:
I hope to put — I think the issue has been put to bed. It’s not the image. I can call Don Carr [sic] to tell you that. We also talked to a guy last night, Jim Orcherton, who was also an individual who worked on the rendering. We didn’t have time to put this in our papers. This was late last night. He also confirms that it’s not the tool. And so we could call both of them.
J.A. 20888 (emphasis added). Ballard reiterated that, based on the statements of Karr and Orcherton, “there is no doubt that [the image in the brochure is] not Mr. Nikiforuk’s invention.” J.A. 20897. Ballard made this same assertion to the jury in his closing argument.
In light of the non-production of the original brochure, the district court sanctioned Tesco by reversing the burden of proof on validity, and setting the burden to *1371 be a preponderance of evidence. The jury concluded that NOV infringed the relevant claims of the patents-at-issue, found certain of those claims to be not invalid, and found that the brochure was not enabling.
II .
After trial, the district court issued an April 12, 2011 order .permitting post-trial discovery on the brochure. NOV filed what the parties characterize as post-trial summary judgment motions of invalidity under 35 U.S.C. § 102(b) and § 103 based on, inter alia, what it asserts was disclosed in the brochure.[1] NOV also filed further motions to compel regarding the brochure, alleging bad faith on the part of Tesco. The court held a series of hearings regarding the brochure. The district court denied NOV’s post-trial summary judgment motion regarding the on-sale bar on October 19, 2012, Tesco v. Weatherford Int’l, Inc., 904 F.Supp.2d 622 (S.D.Tex.2012), but granted NOV’s post-trial summary judgment motion for obviousness on December 6, 2012,[2] Tesco Corp. v. Weatherford Int’l, Inc., 904 F.Supp.2d 638 (S.D.Tex.2012). The court did not base the obviousness determination on the brochure, but instead relied on an obvious-to-try analysis. Id. at 643 n. 2.
NOV continued its post-trial motions practice with a focus on its request for attorney’s fees under § 285. Tesco filed a motion seeking judgment in its favor regarding the exceptional case determination, arguing that a “trial” was unnecessary because all relevant allegations regarding litigation misconduct had already been heard by the court.[3] During a June 4, 2013 hearing, the court asked Ballard if he currently believed that the brochure disclosed the invention, and Ballard admitted that it did, but reiterated that Karr and Orcherton had told Luman dmv ing trial that the brochure did not disclose the invention. At the same hearing, the district court expressed its concerns that Tesco may have brought suit without doing the necessary due diligence to find a brochure that could have been invalidating.
Ill
NOV deposed both Karr and Orcherton near the end of 2013, focusing on the discussions between Karr/Orcherton and the Attorneys during trial. Karr testified that he did not say that the brochure failed to disclose the invention. J.A. 40391. Karr explained that, when he first spoke with Luman, he informed Luman that he could not tell definitively where the link arms connected to the Case Drive System in the brochure because of the low resolution of the image. J.A. 40391; see also Sanctions *1372 Order, at *4-5 (presenting further relevant portions of Karr’s deposition testimony). Once Luman sent Karr a higher resolution picture three days later — still during the trial — Karr says he then told Luman that the image did show the invention. He further informed Luman that he did not prepare the image. Orcherton also was asked about the image, and this conversation with Luman, and Orcherton responded that he explained to Luman that he had no knowledge of who did the rendering of the image in the brochure. J.A. 40406.
After discovery was completed, the district court set a trial date of March 17, 2014, for the exceptional case “counterclaim,” and held a motions hearing on February 21, 2014, to discuss, in part, the litigation misconduct issue.
IV
On August 25, 2014, the district, court issued an order sua sponte dismissing the case with prejudice under the court’s inherent authority based on counsel’s inaccurate representations “to the Court during trial.”[4] Sanctions Order, at *1. The court found that Karr and Oreherton’s testimony was “contrary to the representations Tesco made to the Court during trial.” Id. The court concluded that Karr did not “unequivocally” state that the brochure did not include the invention. The court found that the representation to the court during trial justified a finding of bad faith. Id. The court said that had Karr and Orcher-ton’s actual statements been reported to the court, it may have entered judgment for NOV at that point in the trial. Id. Indeed, the Attorneys concede on appeal that they knew that the brochure disclosed the invention within days of telling the court that it did not and knew that Karr did not prepare the rendering, despite telling the court he did. See note 6, infra.
The court said it had an “independent obligation to safeguard ... the proceedings before it.” Id. It reasoned that the brochure “might very well have been case dispositive.” Id. The court explained that a lesser sanction would be insufficient. Id. at *7. The court went on to emphasize, however, that:
The Court reaches its decision with great reluctance. The Court is entirely confident that the conduct that it finds so troubling is entirely out of character for the attorneys. However, the conduct is serious and has had significant and costly ramifications to the Court and Defendants.
Id. The court did not award fees to NOV at this time, but said it was reserving the question of whether fees might be appropriate for later consideration in light of its August 25 findings. Tesco and the Attorneys again filed notices of appeal.[5] During the pendency of the appeal, Tesco, with new counsel, reached a settlement and a mutual release with all defendants, including a release of the request for attorney’s fees under § 285. Oral Argument at 29:04-29:48, Tesco v. Nat’l Oilwell Varco, L.P., No. 15-1041 (Fed.Cir. July 7, 2015). Tesco subsequently dismissed their appeal. Order at 2, Tesco Corp. v. Nat’l Oilwell Varco, L.P., No. 15-1040 (Fed.Cir. April 23, 2015). The Attorneys joined the settlement, including the mutual releases. Appellants Reply Br. 6-7. The Attorneys *1373 maintain, however, that the releases they executed explicitly carved out the Attorneys’ right to continue to pursue this appeal.
DISCUSSION
I
We determine our jurisdiction over a case or controversy according to Federal Circuit law, not regional circuit law. Nisus Corp. v. Perma-Chink Sys., 497 F.3d 1316, 1318 (Fed.Cir.2007) (‘We resolve questions as to our jurisdiction by applying the law of this circuit, not the regional circuit from which the case arose.”); Sanders Assocs., Inc. v. Summagraphics Corp., 2 F.3d 394, 395 (Fed.Cir.1993) (“[Bjeeause the appealability of the sanction order relates directly to the issue of our own jurisdiction, this court will determine its own jurisdiction to hear this appeal.”); Woodard v. Sage Prods. Inc., 818 F.2d 841, 844 (Fed.Cir.1987) (en banc) (“This court has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it.”). “We may, of course, look for guidance in the decisions of the regional circuit to which appeals from the district court would normally lie, as well as those of other courts. However, our decision to follow another circuit’s interpretation ... results from the persuasiveness of its analysis, not any binding effect.” Woodard, 818 F.2d at 844.
The Attorneys argue that there remains an Article III case or controversy because the statements made in the district court’s opinion constitute a sanction against the Attorneys, and the subsequent reputational harm to the Attorneys is a sufficient injury-in-fact to justify our jurisdiction. The Attorneys further claim that the district court erred, as a procedural matter, in issuing a sanctions order under its inherent authority without providing the Attorneys notice and an opportunity to be heard. The Attorneys believed that the result of the hearings held in early 2014 would be, at worst, a trial on NOY’s exceptional case motion, and they claim to have been taken by surprise by the sanctions order. On the merits of the sanctions order, the Attorneys argue that the district court erred in finding bad faith because Ballard relied on Karr’s statements during trial when Ballard made the representations to the court about the brochure, and Karr was equivocal during his deposition testimony about what he told Luman. According to the Attorneys, the deposition evidence of Karr and Orcherton was an insufficient basis upon which to premise an exercise of the court’s inherent authority. They contend, moreover, that this is especially true because the court chose to dismiss the case with prejudice.
NOV responds that, due to the settlement agreement, there is no enduring case dr controversy. All parties mutually released each other, including the Attorneys, from any further liability, and NOV claims that statements made in an opinion issuing formal sanctions against Tesco, not the Attorneys, cannot justify our jurisdiction. NOV also argues that the Attorneys received more than sufficient due process, including multiple opportunities to recant their statements to the court, and that the trial court informed the Attorneys on multiple occasions that he was considering issuing sanctions for litigation misconduct. And for the merits of the sanctions order, NOV asserts that the district court acted well within its inherent powers.[6]
*1374 Because we conclude that there is no on-going case or controversy sufficient to justify our jurisdiction, we decline to engender a discussion of either the sufficiency of the district court’s notice before entering the order, or the merits of the district court’s use of its inherent authority to dismiss the case.[7]
II
Article III, section 2 of the Constitution extends the “judicial Power of the United States” to an enumerated list of cases or controversies. Under this framework, a party must have standing to resolve the dispute, and there must be an on-going case or controversy throughout the trial and appeals. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (recognizing three elements necessary for a federal court to have Article III standing: (1) an injury-in-fact that is “actual or imminent, not conjectural or hypothetical”; (2) “a causal connection between the injury and the conduct complained of’; and (3) a likelihood that the “injury will be redressed by a favorable decision”). We have generally held that nonparties “may not appeal from judgments or other actions of a district court.” Nisus, 497 F.3d at 1319. We have made an exception, however, for an attorney “held in contempt or otherwise sanctioned by the court in the course of litigation,” concluding that, once the court has specifically punished an attorney, the injury “becomes personal to the sanctioned individual and is treated as a judgment against him.” Id.
This appeal presents two questions that must be resolved in order for us to have jurisdiction over the dispute: (1) can the sanctions order that was explicitly issued against Tesco be considered a formal reprimand against the Attorneys so as to provide them with standing to pursue this appeal; and (2) what is the effect of the settlement by all parties on the redressa-bility of the Attorneys’ request for relief? In order for us to have jurisdiction over this appeal, we would have to conclude that the order was the equivalent of a formal reprimand against the Attorneys and that we can redress the injury to their reputation. Because we do not find we can redress the Attorneys’ claimed injury, we need not decide whether the sanctions order in this case is the type of reprimand that could confer standing to pursue this appeal.
A
We have twice recently addressed the appealability of a sanctions order. In Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346 (Fed.Cir.2003), we held that we had jurisdiction when the Court of International Trade formally reprimanded a Department of Justice attorney. In an unpublished opinion, the Court of International Trade found that the attorney violated Rule 11 of the Rules of the Court of International Trade due to *1375 misrepresentations made to the court, including the omission of language from quotations. Id. at 1349-50. The Court of International Trade opinion concluded with the statement: “Accordingly, the court hereby formally reprimands her.” Id. The Court of International Trade did not, however, impose any monetary sanctions. Id.
On appeal, we concluded that “we have jurisdiction to review the. Court of International Trade’s formal reprimand of [an' attorney] for attorney misconduct.” Id. at 1352 (noting that the reprimand was “explicit and formal, imposed as a sanction”). We explained that a formal reprimand, even without monetary sanctions, could have a “seriously adverse effect ... upon a lawyer’s reputation and status in the community and upon his career.” Id. Because of this, we concluded that the attorney had standing to appeal the order independently of any appeal by the parties. Id. at 1352-53. We noted, however, that our jurisdiction did have limits—“judicial statements that criticize the lawyer, no matter how harshly, that are not accompanied by a sanction or findings, are not directly appealable.” Id. at 1352; see also id. at 1353 (“Nothing in this decision should be taken as suggesting ... that other kinds of judicial criticisms of lawyers’ actions, whether contained in judicial opinions or comments in the courtroom, are also directly reviewable.”).
We again addressed our jurisdiction over an appeal from a potential sanction against an attorney in Nisus. In Nisus, the district court concluded that the patent-at-issue was unenforceable because of inequitable conduct, in part due to the actions of one of the attorneys who prosecuted the patent and participated in the trial as a witness. 497 F.3d at 1318. The parties settled, but the prosecuting attorney appealed the inequitable conduct determination and the denial of his motion to intervene in the litigation. Id. We recognized that:
[A] court’s power to punish is not exercised simply because the court, in the course of resolving the issues in the underlying case, criticizes the conduct of a nonparty. Critical comments, such as in an opinion of the court addressed to the issues in the underlying ease, are not directed at and do not alter the legal rights of the nonparty. We recognize that critical comments by a court may adversely affect a third party’s reputation. But the fact that a statement made by a court may have incidental effects on the reputations of nonparties does not convert the court’s statement into a decision from which anyone who is criticized by the court may pursue an appeal.
Id. at 1319. We reiterated our conclusion in Precision Specialty Metals that criticisms of attorneys intended to be “a formal judicial action” are appealable, but not other kinds of judicial criticisms. Id. at 1320. Because the district court did not enter any formal judicial action against the attorney, we concluded that we did not have jurisdiction over the appeal. Id. at 1321. We held that:
[AJbsent a court’s invocation of its authority to punish persons before it for misconduct, actions by the court such as making adverse findings as to the credibility of a witness or including critical language in a court opinion regarding the conduct of a third party do not give nonparties the right to appeal either from the ultimate judgment in the case or from the particular court statement or finding that they find objectionable.
Id. Allowing appeals based solely on concerns about professional reputation would open the floodgates to appeals “by any nonparty who feels aggrieved by some *1376 critical statement made by the court.” Id. at 1320.
Precision Specialty Metals and Nisus thus require a formal sanction or reprimand to justify our jurisdiction over an appeal by an attorney from an order criticizing the attorney’s conduct. The Attorneys argue that the present order should be considered the equivalent of a formal reprimand because the dismissal was predicated on the conduct of the Attorneys. The Attorneys 'further say that having their client’s case dismissed is more harmful to them than would be a small monetary sanction, which they contend surely would justify the exercise of our jurisdiction under Precision Specialty. Metals. NOV responds that Nisus makes clear that, when counsel’s conduct is criticized in the course of rendering judgment against a party, that counsel lacks standing to pursue an appeal. The present case does not fit nicely within the facts of either Precision Specialty Metals or Nisus, however.
Neither Precision Specialty Metals nor Nisus addressed the effect of a subsequent settlement agreement. If Tesco, NOV, and the Attorneys had not entered into a settlement absolving all parties of any further liability, we would be required to determine if the statements made in the district court order are functionally equivalent to a formal reprimand, and thus provide the Attorneys with the standing necessary to pursue this appeal. The intervening settlement, however, renders that determination unnecessary to the resolution of this appeal.
B
Our court has not previously determined the effect of an intervening settlement on an appeal of an order containing critical statements about the conduct of an attorney. Our sister circuits have, however, addressed the effect of a change in circumstances which removes or moots the underlying judgment. We agree with their conclusion that an intervening settlement can abrogate the case or controversy justifying appellate jurisdiction.
For example, in In re Williams, 156 F.3d 86, 87 (1st Cir.1998), the United States Court of Appeals for the First Circuit had to determine if “a trial court’s published findings of attorney misconduct [are] ... independently appealable, notwithstanding that the monetary sanctions imposed by the court for that conduct have been nullified.” There, a bankruptcy court judge imposed Rule 37(b) sanctions against the government and two government attorneys for failing to timely produce certain documents during discovery. Id. at 88. In his opinion, the bankruptcy judge “harshly criticized” the two attorneys, and ordered them to each pay $750 to the court. Id. But on reconsideration, the judge vacated one of the monetary sanctions, and instructed that the other attorney pay the $750 to the aggrieved party, not the court. Id. The bankruptcy judge refused, however, to vacate his findings, and the district court also declined to vacate any of the bankruptcy court’s factual findings. Id. at 89.
The First Circuit concluded that it did not have jurisdiction to review the factual finding from the original bankruptcy judge’s opinion. Id. at 89-92. Once the monetary sanctions were removed from .the case, the only remaining “sanctions” were the statements made in the published opinion that had not been vacated. Id. at 89. The court recognized the reputational harm such statements could have on the attorneys, but reiterated that “federal appellate courts review decisions, judgments, orders, and decrees — not opinions, factual findings, reasoning, or explanations.” Id. at 90. Because the monetary sanctions *1377 were ameliorated and no reprimands were imposed, the court found it “lack[ed] jurisdiction to consider the propriety of the offending findings.” Id. The attorneys argued that the court should hold that “harsh words that reflect adversely on a lawyer’s professionalism always should be treated as a reprimand (and, therefore, as a sanction),” but the court concluded that trying to draw a line between “routine judicial commentary” and “commentary that is inordinately injurious to the lawyer’s reputation” would be too burdensome to manage effectively. Id. at 91. The court did not want to invite litigation over the issue of when statements become sufficiently harsh, and the court could not determine how to limit this analysis to just statements made against attorneys and not other third parties. Id. (“Lawyers, witnesses., victorious parties, victims, bystanders — all who might be subject to critical comments by a district judge — could appeal their slight if they could show it might lead to a tangible consequence such as a loss of income.” (quoting Bolte v. Home Ins. Co., 744 F.2d 572, 573 (7th Cir.1984)) (internal quotation marks omitted)). The First Circuit said it did not want to turn an appellate court into “some sort of civility police charged with enforcing an inherently undefinable standard of what constitutes appropriate judicial comment on attorney performance.” Id.; see also Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1200 (9th Cir.1999) (agreeing with the court in Williams that “words themselves do not constitute sanctions” and do not independently trigger a right to appeal).
The United States Court of Appeals for the Seventh Circuit reached a similar conclusion in Clark Equipment Co. v. Lift Parts Manufacturing Co., 972 F.2d 817 (7th Cir.1992). The district court awarded attorney’s fees and costs to be paid by the sanctioned attorney due to the attorney’s role in contributing to the absence of a crucial witness at trial and for re-arguing .an issue that had previously been resolved. Id. at 818. The attorney immediately appealed the sanctions, but the parties entered a settlement during the pendency of the appeal that included a commitment by one of the parties to pay all of the attorney’s fees owed by the offending attorney. Id. The court recognized that district courts have an interest in guaranteeing that the rules of procedure were followed, but that interest cannot keep a compensa-. tory consent award “alive for appeal after the parties have settled.” Id. at 819 (“[T]he beneficiary of a compensatory sanction may bargain away the court’s interest in seeing its rules enforced.”). The court explained how, normally when an appeal becomes moot, the appellate court vacates the district court’s judgment and remands with instructions to dismiss the complaint. Id. But, because of the settlement, the court clarified that there was no need to dismiss the complaint or vacate the judgment. It pointed out that the attorney was requesting that the court vacate the opinion, not the judgment. Id. at 819-20. The court declined to take that step, explaining that appellate courts review judgments, not opinions. Id.
We agree with the reasoned analysis of our sister circuits. The Attorneys, in essence, face a redressability problem. Once all parties entered . into the settlement agreement, no party — except the Attorneys for reputational reasons — had any enduring interest in the underlying order dismissing the case with prejudice. The case was, for all purposes, complete, considering that the settlement resolved the outstanding motion for attorney’s fees under 35 U.S.C. § 285. The fact that the sanction was directed at Tesco in the opinion, not the Attorneys, further supports the conclusion that no party retains an *1378 interest in the judgment by the district court. Our options for redressing the rep-utational injury of the Attorneys are therefore greatly limited.[8]
Walker v. City of Mesquite, 129 F.3d 831 (5th Cir.1997) is not to the contrary. In Walker, the Fifth Circuit merely concluded that the court had jurisdiction to hear an appeal of a formal sanctions order premised solely on damage to the attorney’s reputation. Id. at 832 (“We have heretofore held that monetary penalties or losses are not an essential for an appeal.”). We have similarly held that our jurisdiction does not require a monetary sanction. See Precision Specialty Metals, 315 F.3d at 1352-53. Although Walker may be relevant to determining when formal non-monetary sanctions which have not been vacated or mooted by later developments are sufficient to justify appellate jurisdiction, Walker does not provide insight into the redressability issues faced by the Attorneys.
Nor do the other cases upon which the dissent relies help the Attorneys’ cause. Fleming & Associates v. Newby & Tittle, 529 F.3d 631 (5th Cir.2008), was concerned with a district court’s continuing authority to impose sanctions predicated on counsel’s misconduct even after a case has settled. The Fifth Circuit simply affirmed the trial court’s right to impose non-compensatory sanctions in such circumstances and its own ability to review any sanction so imposed. Id. at 640. Perkins v. General Motors Corp., 965 F.2d 597 (8th Cir.1992) was to the same effect. Neither case dealt with a circumstance where no sanction remained in place. Indeed, both recognized that sanctions designed to compensate a party fox- the harm it incurred because of the misconduct of its adversary or its counsel — such as the burden shifting sanction and dismissal order at issue here — are mooted by any subsequent settlement.
Kirkland v. National Mortgage Network, Inc., 884 F.2d 1367 (11th Cir.1989), Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263 (7th Cir.1983), Grider v. Keystone Health Plan Central, Inc., 580 F.3d 119 (3rd Cir.2009), Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 6 (1st Cir.2005), and Obert v. Republic Western Insurance Co., 398 F.3d 138, 143 (1st Cir.2005), remand order modified, 2005 U.S.App. LEXIS 4793 (1st Cir. Mar. 24, 2005), were all cases where formal sanctions and/or reprimands were imposed upon counsel, leaving an order in place which could be reviewed and presumably vacated. For example, Sheppard v. River Valley Fitness One, 428 F.3d at 6, involved a monetary sanction against an attorney for misrepresenting his client’s settlement in a closely related case to the plaintiff. Although the dissent cites Sheppard as demonstrating that the First Circuit permits review of “factual findings by themselves (i.e. unattached to any sanctions),” the court in fact preceded this statement with, “if an appellate tribunal has jurisdiction to review [a sanctions] order, its examination will encompass the underlying findings.” Id. (emphasis added). The court affirmed the monetary sanction in that case, but vacated a single factual finding accompanying it. In Obert v. Republic Western Insurance Co., 398 F.3d 138, 143 (1st Cir.2005), remand order modified, 2005 U.S.App. LEXIS 4793 (1st Cir. Mar. 24, 2005), the attorneys appealed orders sanctioning their conduct. The court granted review of formal rulings that the *1379 attorneys violated state ethics rules and Rule 11, while confirming that the settlement of the underlying case mooted the award of attorneys’ fees and the revocation of pro hac vice status.
The only two cases where it appears reputational injury without more was deemed sufficient to justify the exercise of jurisdiction, Butler v. Biocore Medical Technologies, Inc., 348 F.3d 1163 (10th Cir.2003) and Johnson v. Board of County Commissioners, 85 F.3d 489 (10th Cir.1996)—both out of the Tenth Circuit-lacked any discussion of the redressability concern upon which our decision is predicated. This is perhaps understandable since, in both cases, the district courts’ orders were affirmed, obviating the need to assess what relief the court of appeals might fashion.
The Attorneys request that we remedy their injury in one of three ways: (1) vacate the underlying order; (2) remove the district court’s finding of bad faith; or (3) remand for a full hearing on litigation misconduct. There is no need to vacate the district court’s judgment and underlying order because the settlement rendered that step unnecessary by making the judgment moot. See Clark Equip., 972 F.2d at 819-20. And we decline to address the predicate findings in the trial court’s opinion. As the court in Williams correctly explained, and we have noted in many contexts, Courts of Appeals review judgments, not opinions. 156 F.3d at 90; cf. OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc., 701 F.3d 698, 707 (Fed.Cir.2012) (“we review judgments not opinions”); Mangosoft, Inc. v. Oracle Corp., 525 F.3d 1327, 1330 (Fed.Cir.2008) (same); Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540 (Fed.Cir.1983) (“We sit to review judgments, not opinions.”). We also will not remand for a full hearing on litigation misconduct. That would be an unnecessary use of the district court’s and the parties’ resources. Although the Attorneys claim that .a full hearing would allow them the opportunity to clear their name, we have no authority to order a court to conduct a hearing in a case that is closed and cannot be reopened.
We agree that statements made in a judicial opinion can harm the reputation of attorneys, and that an attorney’s reputation is one of his or her most valuable assets. But that concern alone is insufficient to justify our jurisdiction where there is no judgment that remains. There is no remaining sanction which could be vacated or punishment imposed upon the Attorneys which could be reversed. There is simply no Article III case or controversy that allows us to redress any reputational harm the Attorneys may have suffered.
Conclusion
Because we find that, in light of the settlement entered by all parties to the litigation, including the Attorneys, there remains no on-going case or controversy, we dismiss the appeal for lack of jurisdiction.
DISMISSED

. These motions more appropriately should be characterized as motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, not as Rule 56 motions for summary judgment.

. Tesco attempted to appeal the district court's summary judgment decision. The district court contacted our court, however, informing the Clerk of Court that the appeal was premature because he had not yet resolved a pending counterclaim seeking a declaration of unenforceability of the patents on inequitable conduct grounds or ruled on NOV’s request for attorney’s fees. After briefing by both parties, we dismissed the appeal as premature. Order at 3, Tesco Corp. v. Nat’l Oilwell Varco, L.P., Nos. 2013-1155, -1262 (Fed.Cir. Oct. 3, 2013).

.NOV filed what it characterized as a “counterclaim” for attorney's fees under § 285. Though that procedural posture was odd, since a motion under § 285 can be filed without the assertion of an affirmative claim, the parties treated it as if it were a true counterclaim upon which they believed the court would conduct a trial. Of course, while a hearing may or may not have been needed, no "trial” was required.

. Since the court already had entered judgment against Tesco on invalidity grounds, it appears that this dismissal was meant to operate as an alternative basis for that judgment.

. The parlies do not mention any formal ruling on or dismissal of the inequitable conduct counterclaims. It was clearly mooted by the court's invalidity judgment, however, and would, thus, no -longer affect our jurisdiction over this appeal.

. At oral argument, the Attorneys contended that, even though they admit they knew during trial that the statements made to the district court turned out to be incorrect, they had no affirmative duty to correct the misim-pression to the court under the Texas Disci *1374 plinary Rules of Professional Conduct. Oral Argument at 41:50-42:15, Tesco Corp. v. Nat’l Oilwell Varco, L.P., No. 151041, available at http ://oralarguments. cafc.uscourts. gov/ default. aspx?fl=2015-1041. mp3.

. The dissent argues that it is "unfair” to describe the background facts giving rise to this appeal and then dismiss the appeal on jurisdictional grounds. What the dissent fails to recognize is that, like all judgments, a legal determination regarding our jurisdiction—or lack thereof—over this appeal turns on the facts presented. As our cases in this area reveal, even fine factual distinctions can alter the jurisdictional analysis. As noted later, the dissent’s failure to recognize the importance of factual distinctions to legal outcomes is further evidenced by its citation to cases that are materially factually distinguishable from this one.

. We note that the parties, but not the intervening attorney, in Nisus also settled their dispute prior to appeal. Rather than decide the question of whether the district court’s dismissal order amounted to the type of formal judicial action over which we could exercise jurisdiction, we instead decide this case on redressability grounds.